554 P.2d 727 (1976)
In re the MARRIAGE OF Carol D. PEPER, Appellee, and
Jeanette M. Peper, Appellant.
No. 75-165.
Colorado Court of Appeals, Div. III.
August 12, 1976.
*729 H. Earl Moyer, Lakewood, for appellee.
Berger & Rothstein, P.C., David Berger, Commerce City, for appellant.
Selected for Official Publication.
STERNBERG, Judge.
The primary issues in this appeal relate to a court's power to enjoin parties before it from prosecuting civil actions in another state, and the court's use of its contempt powers to punish violation of such an injunction. In this dissolution of marriage proceeding, the court enjoined such actions and punished by abating child support and maintenance. We affirm in part and reverse in part.
The marriage of the parties was dissolved by a decree entered in Colorado on July 19, 1972. A property settlement agreement previously prepared in Pennsylvania and dated January 18, 1972, was incorporated in that decree. The agreement provided, inter alia, that the husband pay $250 per month for support of the three minor children of the parties and $200 per month maintenance. It divided the parties' assets with substantial property going to the wife and the husband receiving a $50,000 promissory note payable to the parties at the rate of $932.89 per month.
The agreement specified that "Husband, provided he shall have the financial ability, shall pay with respect to each such child... funds actually expended or required for tuition, bed and board of such child in ... [a fully accredited college]." The agreement also stated that it "shall be governed by the laws of the Commonwealth of Pennsylvania ...."
The husband married a second time, but that union too was dissolved. As an incident to that dissolution proceeding, the husband received his second wife's interest in a business located in Colorado, and the second wife received as her sole property the $50,000 note which the husband had acquired upon dissolution of his first marriage.
In November 1973, the first wife filed a motion to increase support payments and the husband countered with a motion to reduce such payments. Each party sought a modification or interpretation of the order to pay college expenses for the children, one child being then enrolled in college. Thereafter, the wife commenced proceedings in Pennsylvania to attach the husband's property located in that state, including specifically, the $50,000 note. The husband moved for protective orders, and on March 19, 1974, the court enjoined the wife from proceeding in the Pennsylvania action and ordered her to dismiss that suit by April 20, 1974.
After a hearing held on all motions on June 28, 1974, the court (1) denied both motions relating to child support, (2) refused to order the husband to pay college expenses, based on findings of his inability to pay, (3) found the wife in violation of the order to dismiss the Pennsylvania action, and (4) abated, but did not terminate, the husband's obligation to pay child support and maintenance until the wife purged herself of contempt. These orders constitute the basis of the wife's appeal.
*730 With respect to the denial of the motion to increase child support, and the refusal of the court to order the husband to pay college expenses, the court made certain findings concerning each party's financial ability. Those findings were based on evidence of enhancement of the wife's financial condition resulting from an increase in the value of the property she had received at the termination of the marriage, together with evidence of lower earnings by the husband; hence they are binding on review. Dorsey v. Dorsey, 28 Colo.App. 63, 470 P.2d 581 (1970).
Moreover, the court was correct in applying the plain meaning of the contractual provision relating to college expenses, quoted above. The husband's obligation was specifically predicated on his financial ability to pay such expenses.
The wife also argues that the clause in the separation agreement making Pennsylvania law controlling in some way affects the power of the Colorado court to decide whether the husband did have the financial ability to pay for the college expenses of his children. However, the court was presented with a factual, rather than a legal issue, and thus the provision relating to applicability of Pennsylvania law in no way affects the action of the court in this regard. In fact the agreement itself provides that it may be brought into evidence "in any court of competent jurisdiction for the purposes of enforcing any of [its] terms." This is precisely what was done here.
The wife next challenges the power of the trial court to enter its order directing her to dismiss the Pennsylvania civil action seeking to attach the $50,000 note. That challenge is without merit.
Colorado courts have the power to enjoin a party from proceeding in an action in another jurisdiction. Hayutin v. Hayutin, 152 Colo. 261, 381 P.2d 272 (1963). This power may be exercised when another action interferes unduly or inequitably with the progress of the local litigation. Such an injunction merely restrains the parties and not the foreign court. Steelman v. All Continent Corp., 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937).
Here the wife was attempting to attach in Pennsylvania a promissory note which had been awarded the husband in the first divorce action and which he had conveyed to his second wife as part of a property settlement. The trial court specifically found that if that action were allowed to continue, it would impede the property settlement in the second divorce, and could possibly result in a loss to the husband of his primary source of income the business he received from his second wife as consideration for the $50,000 note. Thus, that action could have interfered with the resolution of the issues present in another proceeding, and the wife who was subject to the jurisdiction of the Colorado court could properly be enjoined from continuing to prosecute it. See generally 43 C.J.S. Injunctions § 49.
The wife's next contention is that if the court had the power to hold her in contempt, nevertheless, the procedural requirements applicable to an indirect contempt were not followed. We disagree.
The procedural provisions of C. R.C.P. 107(c) are not exclusive. There is no fixed procedural formula for contempt proceedings; rather the polestar in determining the validity of contempt procedures is whether due process of law is accorded. Austin v. City & County of Denver, 156 Colo. 180, 397 P.2d 743 (1964). See also Shapiro v. Shapiro, 115 Colo. 501, 175 P.2d 387 (1946). Essential to due process in contempt proceedings is the right of one to know that the purpose of the hearing is the ascertainment of whether he is guilty of contempt.
Here the wife was warned, through her attorney, when the court ordered her to discontinue the Pennsylvania suit, that failure to obey would constitute contempt. When issuing that order, the court held that the parties had voluntarily subjected *731 themselves to its jurisdiction by taking part in the original dissolution action and "by mutually seeking additional orders relating to increases or decreases in child support in the instant action, with both parties appearing before this court in person and by their respective counsel of record." The order also contained a warning of contempt and a notice of a hearing to determine whether there had been compliance with the order. Three weeks after entry of the order to dismiss the Pennsylvania action, the wife's Pennsylvania attorney wrote to the husband's lawyer stating that the order would not be complied with. The wife, therefore, had adequate notice of the hearing. See Freeman v. Superior Court, 44 Cal.2d 533, 282 P.2d 857 (1955).
Thus, the court had jurisdiction over the wife, see Brown v. Brown, 31 Colo.App. 557, 506 P.2d 386 (1973), affirmed in part, reversed in part, 183 Colo. 356, 516 P.2d 1129 (1973); the court acted within its power in entering the contempt order. In re Wall, 146 Colo. 74, 360 P.2d 452 (1961); and evidence adduced at the hearing supported the court's finding of contempt.
The wife's final contention is that the court erred in abating payments of child support and maintenance incident to holding her in contempt. We hold that the abatement of maintenance was proper, but that the court erred in abating child support.
The order involved here was remedial in nature. See Marshall v. Marshall, Colo.App., 536 P.2d 845, affirmed in part, reversed in part, Colo., 551 P.2d 709 (1976). A court which issues an injunction has the concomitant power to enforce compliance against the person to whom it is directedhere the wife. Thus the temporary abatement, not termination or forgiveness, of maintenance as was done here was proper. see Shapiro v. Shapiro, supra. On the other hand, while temporarily abating child support might well serve to enforce compliance by the wife, it is not justified because it in effect punishes the children for the acts of their mother.
The judgment is affirmed in all respects except as to the abatement of child support, with regard to which it is reversed.
BERMAN and KELLY, JJ., concur.