LAWRENCE T. WHELAN *vs.* SUSAN FRISBEE
(and a companion case[1]).

No. 89-P-615.

Essex. May 21, 1990. - July 27, 1990.

Present: WARNER, C.J., DREBEN, & PORADA, JJ.

*Divorce and Separation,* Separation agreement. Modification of judgment,
Child support. *Contract,* Separation agreement. *Contempt.*

In a divorce action the judge properly modified the judgment as it related
to child support to reflect the parties' relative abilities to contribute to
their obligations to pay their children's college expenses. [79-82]
In a divorce action the judge properly, in the circumstances, determined
that the husband's assumption of all college expenses of the two chil-
dren constituted child support under the separation agreement and
therefore the husband was not guilty of contempt with respect to child
support payments allegedly in arrears. [82]

COMPLAINT for divorce filed in the Essex Division of the
Probate and Family Court Department on October 6, 1982.

A complaint for modification, filed on September 18, 1987,
and complaints for contempt, filed on October 23, 1987, and
February 11, 1988, respectively, were heard by *Thaddeus
Buczko,* J.

*Mary P. Harrington* for Susan Frisbee.
*Celeste R. Niarchos* for the Lawrence T. Whelan.

WARNER, C.J. We come here to another example of the
careful and thoughtful formulation by Probate Court judges
of approaches to the resolution of problems arising in the en-
forcement and modification of divorce separation agreements,
as they relate to child support, which survive a divorce judg-
ment. See *Knox* v. *Remick,* 371 Mass. 433, 437-438 (1976);
*Ames* v. *Perry,* 406 Mass. 236, 240-241 (1989); *DeCris-*

---

[1]Susan Frisbee *vs.* Lawrence T. Whelan.

*tofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231, 236-237 (1987). See also *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 373-374 n.12 (1985).

By a judgment of divorce nisi, entered on July 17, 1985, the parties, Lawrence and Susan, were ordered to comply with the terms of a separation agreement which was incorporated in the judgment but which survived with independent legal significance. Exhibit A to the agreement, entitled, "Custody: Support," provides, among other things,[2] that Lawrence pay Susan $110 each week as alimony and $100 per week as support for each of their two children. Child support would be reduced by $100 per week upon the emancipation of the first child and terminated upon the emancipation of the second child. Emancipation would come under the agreement upon a child's graduation from high school and attaining the age of eighteen, unless the child planned to attend college as a full-time student. In the latter event, the parties agreed that emancipation would occur upon the child's attaining the age of twenty-one or the completion of college.

Exhibit C to the agreement, entitled, "College Education for Children," requires the parties to maintain an education fund for the children, and, in the third paragraph, provides that:

> "With regard to future college education expenses of the children not covered by the aforementioned educational trust fund, the Husband shall be responsible for said expenses, to the best of his ability. The Wife shall make whatever contribution she determines in good faith she is able to provide. She agrees to utilize in so far as any excess funds are on hand and received for child support from the Husband for the children attending college, directly for the child's benefit in connection with college expenses (including room and board, books, clothing allowance, transportation, etc.)."

---

[2] The parties had joint legal custody, with Susan having physical custody, of the two children.

On September 18, 1987, Lawrence filed a complaint for modification, alleging that the parties' children (then nineteen and almost eighteen years old) were attending college, that the expenses for their tuition, room and board for the first semester amounted to $17,389, and that Susan had failed to make any contribution to those expenses despite her ability to do so. He requested that the divorce judgment be modified by "permitting [him] to first utilize all current support and alimony payments towards the children's college tuition expenses or alternatively, [by] terminating all alimony and support obligations." Susan filed her answer to the complaint, pleading the separation agreement in bar. She also filed a complaint for contempt alleging that Lawrence was in arrears in his child support payments in the amount of $1,300. Lawrence countered claiming that he was spending all child support monies for the children's college tuition and expenses. He too filed a cross complaint for contempt alleging that Susan had failed to utilize excess funds "on hand," as required by the agreement, and to contribute to the children's college expenses.

The complaints were consolidated for hearing by a Probate Court judge who, after reviewing the parties' agreement, financial circumstances and contributions toward the education and other expenses of the children, entered a "modification judgment" which terminated Lawrence's obligation to pay child support and directed him to continue to pay all of the reasonable costs of the children's college educations. On Susan's complaint for contempt, the judge ruled that Lawrence had accounted for support payments by virtue of his assumption of all college tuition and related expenses. A judgment entered for Susan on Lawrence's complaint for contempt.

Susan appeals from the modification and contempt judgments in favor of Lawrence.

1. *The background.* We take the facts from the judge's comprehensive findings, which have ample support in the evidence. The parties' two daughters attend private colleges. The elder child entered Bard College in September, 1986;

the younger child entered Bennington College in September, 1987. The expenses for their tuition, room and board approximate $35,000 per year. Lawrence has paid these amounts and, in addition, about $3,000 per year for books, clothing, transportation, and vacations. Susan has paid nothing toward the college tuition or related expenses of the children.[3]

Lawrence, a business manager, earns approximately $116,000 a year. His present wife earns an additional $45,000 annually, but is responsible for the support of two minor children. Lawrence owns real estate in Gloucester with a fair market value of $180,000 — $200,000 (subject to a mortgage of $100,000), and with his wife jointly owns real estate in Andover with an approximate fair market value of $250,000 (subject to a mortgage of $200,000). Lawrence has additional assets worth approximately $75,000.

Susan, a school guidance counselor, earns approximately $41,000 annually (including alimony from Lawrence of $100 per week). She owns real estate in Rockport worth approximately $250,000 (subject to a mortgage of $120,000), and has additional assets worth $96,320. In June, 1986, Susan borrowed $100,000 from a bank which she used to purchase a one-third interest in a closely held corporation, Cove Court Gourmet, Inc., which operates a delicatessen and catering business. The loan was secured by a mortgage on her property in Rockport. Susan later incurred additional debt on behalf of the corporation in the amount of $54,000. At the time of trial, she received no income from Cove Court.

2. *The modification judgment.* In "modifying" the divorce judgment, the probate judge found that, despite the language of Exhibit C to the separation agreement, Susan had failed to contribute toward the college tuition or related expenses of the children. He further found that absent her voluntary assumption of substantial debt, she would have had additional

---

[3]The judge found that Lawrence made child support payments of $200 per week until September, 1987, when his younger child entered college. In 1987, Susan paid $7,000 in expenses on behalf of the children. She estimated that in 1988 she would pay approximately $5,000 in "direct expenses" on behalf of her daughters.

funds "on hand" to contribute to such expenses. After noting that Susan "has the ability to contribute," the judge concluded that it would be inequitable to require Lawrence to be responsible for the entire college tuition bill as well as to continue payment of $200 per week as child suport. The judge expressed reluctance to enforce specifically the separation agreement as, in his view, the provisions with regard to the parties' obligations for college expenses were "vague and open-ended." Rather, he found it "necessary" to modify the divorce judgment based on the presence of "countervailing equities," namely, the vagueness of the agreement coupled with Lawrence's payment of all college expenses and the wife's assumption of substantial debt. See *Knox* v. *Remick*, 371 Mass. at 437-438; *Ames* v. *Perry*, 406 Mass. at 240-241; *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. at 236-237. He thus fashioned a judgment in which Susan made contribution to the children's college expenses in accordance with the separation agreement by relinquishing receipt of the $200 weekly child support payments. The provision for alimony was left intact.

On appeal, Susan argues that the judge erred in modifying the divorce judgment, as the separation agreement survived the judgment with independent significance and barred modification. Additionally, she asserts that there is nothing in the judge's findings to suggest that there are "countervailing equities" which allow modification of the judgment by ordering child support at an amount different from that provided in the agreement. See *Ames* v. *Perry*, 406 Mass. at 240-241. We need not address the question whether there was a showing of "countervailing equities" sufficient to justify modification, as, notwithstanding the judge's reluctance to enforce the agreement, it is evident from his findings and judgment that that is essentially, and properly, what he did.

"[A] separation agreement, which survives a divorce judgment and is valid at the time of the entry of that judgment (that is free from fraud and coercion and fair and reasonable) should be specifically enforced," absent changed circumstances which give rise to countervailing equities. *Id.* at 240-

241. *DeCristofaro* v. *DeCristofaro, supra* at 235-236. Such agreements are to be construed in accordance with justice and common sense and the probable intention of the parties. See *Feakes* v. *Bozyczko,* 373 Mass. 633, 635 (1977); *Fried* v. *Fried,* 5 Mass. App. Ct. 660, 664 (1977); *Kotler* v. *Spaulding,* 24 Mass. App. Ct. 515, 517 (1987). See also *Bowser* v. *Chalifour,* 334 Mass. 348, 352 (1956). Although the provision of the separation agreement with respect to payment of college expenses is not a paradigm of clarity, we think that, in a general sense, it is sufficient to apprise the parties of their respective obligations under the agreement.[4] See *In re Marriage of Moriarty,* 132 Ill. App. 3d at 898-899; *Cooke* v. *Pieters,* 123 Misc. 2d 351, 352-353 (N.Y. Fam. Ct. 1984). Compare and contrast *Shetney* v. *Shetney,* 49 Wis. 2d 26, 38-39 (1970). Susan does not contend otherwise.[5] Here, the judge reasonably construed the agreement to mean that Susan was required, within her financial ability, to make some contribution toward the payment of the children's college expenses.

Susan's apparent contrary argument that the parties intended Lawrence to be responsible for *all* of the children's college expenses would render the second and third sentences of the third paragraph of Exhibit C to the agreement virtually meaningless. See *Tupper* v. *Hancock,* 319 Mass. 105, 108 (1946); *Computer Sys. of America, Inc.* v. *Western Reserve Life Assur. Co.,* 19 Mass. App. Ct. 430, 437-438 (1985).

---

[4]Provisions in a separation agreement requiring a spouse to pay for children's college expenses, contingent on future ability to do so, are not uncommon. See, e.g., *In re Marriage of Peper,* 38 Colo. App. 177, 178 (1976); *In re Marriage of Moriarty,* 132 Ill. App. 3d 895, 897-898 (1985); *Cooke* v. *Pieters,* 123 Misc. 2d 351 (N.Y. Fam. Ct. 1984); *Emrick* v. *Emrick,* 445 Pa. 428, 430 (1971); *Ferguson* v. *Ferguson,* 481 P.2d 658, 658 (Wyo. 1971).

[5]Susan argues that "[t]he Court's further suggestion that the agreement is vague is also groundless and was never raised by either party." Although she goes on to discuss how the direct support provisions of the agreement are "eminently clear," we note that the only suggestion of vagueness made by the judge concerns the provision with respect to college expenses.

The judge's finding that Susan has, and had, the ability to contribute to the children's college expenses is not clearly erroneous. See Mass.R.Dom.Rel.P. 52(a), as amended, effective January 2, 1987; *Palmer* v. *Palmer*, 27 Mass. App. Ct. 141, 148 (1989). The judge, therefore, did not err in fashioning a judgment which comports with the spirit of the parties' agreement and essentially enforces its terms.[6]

3. *The contempt judgment.* Susan challenges the judge's conclusion that Lawrence's failure to pay child support was not contemptuous. She asserts that, although Lawrence had a contractual obligation to pay support, he failed to do so. Moreover, she argues that he failed to demonstrate a material change in circumstances which would have allowed the judge to cancel the arrearage.[7]

In order to find a defendant in civil contempt there must be a clear and unequivocal command and an equally clear and undoubted disobedience. *Nickerson* v. *Dowd*, 342 Mass. 462, 464 (1961). *Diver* v. *Diver*, 402 Mass. 599, 602-603 (1988). *Hinds* v. *Hinds*, 4 Mass. App. Ct. 63, 67 (1976). *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 340 (1990). It is enough to say that here the judge found that, in the circumstances, although Lawrence was determined to be in arrears in the amount of $5,190, he had accounted for these payments by his assumption of all college tuition and related expenses of the children. There was no error in the entry of judgment for Lawrence on Susan's complaint for contempt. See *Whitten* v. *Durkee*, 327 Mass. 562, 562-564 (1951).

*Judgments affirmed.*

---

[6]That the judge concluded that Susan was not guilty of contempt does not require a different result.

[7]Susan makes no argument under G. L. c. 119A, § 13, inserted by St. 1987, c. 714, § 1.