CHRISTINE A. DENNIS *vs.* HENRY P. DENNIS.

No. 89-P-562.

Essex. May 21, 1990. - August 22, 1990.

Present: WARNER, C.J., DREBEN, & PORADA, JJ.

*Divorce and Separation*, Separation agreement, Modification of judgment,
    Child support. *Contract*, Separation agreement.

In a modification proceeding after a judgment of divorce, the judge, prop-
    erly employing the standard set forth in *Knox* v. *Remick*, 371 Mass.
    433 (1976), correctly determined that there had been a material change
    in circumstances since the time of the divorce and that the level of
    available support for the children was inadequate, as the plaintiff was
    incapable financially of meeting her obligation for child support ex-
    pressed in the separation agreement, thus warranting a modification of
    the agreement so as to increase the defendant's obligation for child sup-
    port. [162-166]

COMPLAINT for divorce filed in the Essex Division of the
Probate and Family Court Department on October 7, 1981.

A complaint for modification, filed on February 1, 1985,
was heard by *William Highgas, Jr.,* J.

*David W. Rifkin* for Henry Dennis.

*G. Rosalyn Johnson* for Christine Dennis.

WARNER, C.J. By a judgment of divorce nisi entered on
December 22, 1982, the parties were ordered to comply with
the provisions of a separation agreement which was incorpo-
rated and merged into the judgment, but which, by its ex-
press terms, survived the judgment with independent legal
significance. The agreement provides, among other things,
that the wife (Christine) have physical custody of the two
minor children of the marriage[1] and that the husband

---

[1] The parties' elder child was born in September, 1971; the younger child
in June, 1975. At the time of the modification hearing, the children were
ages seventeen and thirteen.

(Henry) pay $55 a week as child support. Christine has the right to live in the former marital home until she remarries or the younger child is emancipated, at which time the house is to be sold and the net proceeds divided between the parties in accordance with a formula set out in the agreement. Christine is entitled to the income from the property, and is responsible for the payment of the first mortgage, insurance and taxes, as well as the costs of maintenance and repair. Henry is responsible for the payment of a debt owed by the parties to the Danvers Municipal Credit Union. Each party waives the right to seek alimony.

On February 1, 1985, Christine filed a complaint for modification requesting that Henry's child support obligation be increased to $150 a week. She alleged, in the complaint as twice amended, that both Henry's income and the needs of the children had increased, and that the level of available support for the children was inadequate as she was incapable financially of meeting her obligation for support. Henry answered, pleading the separation agreement in bar.

After hearing, a judge of the Probate Court found that Henry had experienced a substantial increase in income since 1982 and that Christine had experienced an increase in expenses of approximately $200 a week, attributable, in large part, to the increased needs of the children. The judge concluded that there had been a material change in circumstances since the time of the divorce and that the level of available support for the children was inadequate as Christine was incapable financially of meeting her obligation for child support as expressed in the agreement. By a modification judgment entered August 30, 1988, the judge ordered Henry to pay $180 a week as child support until such time as a child was emancipated, after which his obligation would be reduced to $90 a week. On appeal, Henry disputes the judge's findings and argues that the separation agreement should have been specifically enforced. We affirm.

A separation agreement which fixes interspousal or child support, and which survives a divorce judgment and is valid

at the time of the entry of that judgment,[2] should be specifically enforced, absent "changed circumstances . . . [which] give rise to countervailing equities." *Ames* v. *Perry*, 406 Mass. 236, 240, 241 (1989). See also *Knox* v. *Remick*, 371 Mass. 433, 436-438 (1976); *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231, 235-236 (1987). "But a Probate Court support order may recast the burden of support for a child, as expressed in a separation agreement, for example, where (a) a support order would be entered or modified, as the case may be, in the absence of such an agreement and (b) the level of available support for the child is inadequate in the circumstances because one former spouse is incapable financially of meeting his or her obligation for child support expressed in that agreement." *Knox* v. *Remick*, 371 Mass. at 437-438.[3] See *Ames* v. *Perry*, 406 Mass. at 240; *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. at 236 & n.7. It is clear from the judge's findings that in modifying the divorce judgment he employed the two-part example set forth in *Knox*.

We have little difficulty concluding that the first part of the *Knox* example was satisfied. Since the time of the divorce, Henry has remarried (his present wife is employed) and his earnings, including overtime, have increased from $276.83 a week to $675 a week. Christine's income, on the other hand, as the judge found and as Henry concedes in his brief, has remained relatively stable,[4] and her expenses, in-

---

[2]There is no argument that the agreement was exacted by fraud or coercion or that it was not fair and reasonable when made. See *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231, 234 n.5 (1987).

[3]The *Knox* court also stated, at 437, that "[a]n agreement to fix a spouse's support obligation for minor children stands on a different footing. Parents may not bargain away the rights of their children to support from either one of them."

[4]Christine's 1982 financial statement filed in the divorce action indicates that she earned $292 a week as a licensed practical nurse and from other part-time employment, and received rental income of $66.27 per week. In 1985, she stated her net weekly income from employment as a nurse and as a tanning salon manager as $274. At the modification hearing, Christine testified that she earned, at one point, $125 (apparently, per week) from each of the two tanning salons that she had managed. Some time after 1986, she discontinued her work in both occupations. She testified

cluding those on behalf of the children, have increased from $390.16 a week to $582.89 a week. The judge could properly find that the changes in Henry's financial position and in the needs of the children would support an increase in child support under the general rules governing modifications of support in the absence of a surviving agreement. See *Schuler* v. *Schuler*, 382 Mass. 366, 367, 370 (1981); *Heistand* v. *Heistand*, 384 Mass. 20, 26-28 (1981). That Christine had made career changes, and, in addition, expected to receive some monies upon the parties' refinancing of the former marital home,[5] would not, in the circumstances, require a different result. Compare *Schuler* v. *Schuler*, 382 Mass. at 373-374.

There also was support for the judge's finding that the second part of the *Knox* example was satisfied. Christine testified that she had been unable to support the children on $55 a week, supplemented by her own income, and had been forced to obtain bank loans and to borrow money from her father in order to make repairs to the home and to meet living expenses. Additionally, there had been times when she

---

that she suffered from "burnout" as a nurse (and did not wish to pay for the additional courses required for continued certification), and that her work hours as a tanning salon manager were keeping her away from her children. (In the latter regard, there was evidence that between April, 1985, and January, 1988, Henry neither saw nor visited the children.) Christine's financial statement filed at the time of the modification hearing showed that she was earning $288 a week as a bookkeeper for two businesses, and was receiving rental income of $63.87 per week.

[5]At the commencement of the hearing, the parties submitted to the court a written amendment to the separation agreement, under which they agreed to apply for a second mortgage or equity loan on the former marital home in the amount of $40,000. Each party would be entitled to one-half of that sum and would be responsible for the payment of the principal and interest on that amount. It was further agreed that any monies expended by Christine for necessary capital improvements to the home would be credited to her at the time of the ultimate sale of the real estate pursuant to the agreement. Christine would be reimbursed $5,866 for monies already expended by her on the home.

At the hearing, Christine testified that she planned to use the monies received by her to remodel the kitchen and bathroom. She stated that the kitchen had "holes in the floor, wires hanging, walls . . . taken down, gapes in the ceiling, [and] insulation all around . . . ." She further testified that the pipes in the bathroom leaked and were "just holding together."

had fallen behind on her food bill and credit card payments and did not have enough money for groceries.

Henry points to a number of circumstances which, in his view, are inconsistent with Christine's claim that she cannot meet the children's needs under the terms of the agreement, and claims that she has the "obvious ability to maintain and even surpass the necessities of child support." These circumstances include Christine's demonstrated ability to pay back (or make timely payment on) numerous loans taken by her, her purchase of wall-to-wall carpeting, a new washer and dryer and two television sets for the home, her payment of the children's uninsured medical expenses, her expenditure of approximately $750 per year for vacations for herself and the children, and her ability to pay for modeling lessons for her daughter[6] and for the "common extras" incurred by her son at school.

Upon review of the testimony and exhibits, we cannot say that the judge's finding is clearly erroneous. See Mass.R.Dom.Rel.P. 52(a), as amended (1984). See also *Ames* v. *Perry*, 406 Mass. at 241 ("[m]uch will be left to the good sense of the Probate Court judge in analyzing the specific case"). While there is indication in the record that Christine has been able to meet certain financial obligations since the time of the divorce, the record as a whole paints a picture of a custodial parent whose expenses as well as needs for child support contemplated under the agreement have escalated beyond her reasonable ability to keep financial pace. Christine's purchases in the past of household furnishings and her expenditure of modest sums of money for vacations do not require a finding that support presently available for the children is adequate. Indeed, a judge may consider a child's "standard of living" in deciding whether the level of available support for that child is inadequate. *Id.* at 242-243. We also are mindful of the court's admonition in *Ames* that "every inquiry on a proposed modification of child support provisions must necessarily include as one weighty 'equity,'

---

[6]Although the judge made no finding on the point, Christine testified that the lessons were paid for by her father.

the fact that the subject of the provisions, the child, was not a party to the agreement." *Id.* at 241.

*Judgment affirmed.*