NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-731

HEATHER BLASER

vs.

KEVIN M. BLASER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Kevin M. Blaser (father), appeals from a judgment in the Probate and Family Court finding him guilty of contempt for failing to preserve certain funds as required by his separation agreement with the plaintiff, Heather Blaser (mother), and from a judgment on a complaint for modification ordering him to make lump-sum payments totaling $55,868.02 toward their two children's college education costs.  We affirm the finding of contempt, but affirm in part the modification judgment and remand the matter for clarification and, if necessary, further findings, concerning how the modification judgment's order of lump-sum payments is to be construed in connection with the additional order that, after making the

lump-sum payments, the father shall pay one-third of the children's college expenses.

Background. The parties married in 2003 and had two children. They divorced in 2008. The divorce judgment incorporated the parties' separation agreement, which survived as an independent contract "with respect to all issues except those issues relating to the children." At issue in this appeal is the provision of the agreement entitled "College Account for Children," concerning an existing account that the father had set up to provide for the children's "future educational needs" (college account provision). The provision noted the balance of the account at that time -- "approximately $56,600.51" -- and stated that the father "shall preserve these funds for the future educational expenses of the minor children." The provision continued, "However, this paragraph shall in no way be construed to restrict the [father's] ability to invest and re-invest the funds in any manner he so chooses."

In 2022, the mother filed a complaint for contempt, alleging that the father had violated the divorce judgment by "failing to preserve and/or utilize the funds . . . for the future educational expenses of the minor children." A Probate and Family Court judge issued a "judgment" on the complaint, finding the father guilty of contempt "for having willfully neglected and failed to preserve the funds" (contempt order).

2

The contempt order further stated that the judge would address the father's failure to preserve the funds "in any future court proceedings filed to address the children's educational needs."

Shortly after the entry of the contempt order, the mother filed a complaint for modification requesting that the court order the father to "contribute toward college tuition and expenses for their son and for their daughter when she becomes enrolled in college full-time." In 2024, following a bench trial, the same judge issued a judgment on the modification complaint (modification judgment). The judge ordered (1) that the father "pay $55,868.02 of the post-secondary educational costs of the parties' children," with one-half to be paid on behalf of each child "directly to each child's educational institution," and (2) that after making those payments, the father pay one-third of the children's college costs, based on the in-State resident costs of the University of Massachusetts-Amherst (UMass Amherst). The father filed a timely notice of appeal from the modification judgment.

Discussion. 1. Scope of appeal. We first confront a threshold procedural issue. The father did not file a notice of appeal after the entry of the contempt order, only after the modification judgment.[1] Normally, a "judgment of civil contempt

___

[1] Although the father timely filed three postjudgment motions that extended his time to file a notice of appeal under

3

is an appealable final judgment."  Scott-Jones v. Lu, 447 Mass. 1006, 1006 (2006).  See, e.g., M.M. v. D.A., 79 Mass. App. Ct. 197, 197, 200-202 (2011); Tatar v. Schuker, 70 Mass. App. Ct. 436, 437, 440, 446-449 (2007).  However, here the judge found the father in contempt, but did not impose a sanction, and in fact left the sanction open indefinitely.  As such, the contempt order was interlocutory in nature, and the father is entitled to challenge it in his appeal from the final judgment.  See Darmetko v. Boston Hous. Auth., 378 Mass. 758, 762 n.6 (1979) ("A contempt order issued during the course of a proceeding has been held not to be a final order appealable by a party").  Cf. Mass. R. A. P. 3 (c) (1) (A)-(B), as appearing in 491 Mass. 1601 (2023) (notice of appeal from final judgment need not specify prejudgment orders subsumed in judgment).

2.  Finding of contempt.  To hold a party in civil contempt, the judge must find "clear and convincing evidence of disobedience of a clear and unequivocal command."  Birchall, petitioner, 454 Mass. 837, 853 (2009).  On appeal, "[w]e review the judge's ultimate finding of contempt for abuse of discretion, but we review underlying conclusions of law de novo and underlying findings of fact for clear error."  Jones v.

_____

Mass. R. A. P. 4 (a) (2) (A), as appearing in 496 Mass. 1601 (2025), from the contempt order, he failed to file a notice of appeal after those motions were denied.

4

Jones, 101 Mass. App. Ct. 673, 688 (2022), quoting Commercial Wharf E. Condominium Ass'n v. Boston Boat Basin, LLC, 93 Mass. App. Ct. 523, 532 (2018). Because this case turns on the language of the separation agreement, we consider whether the college account provision constituted a "clear and unequivocal command" to the father to refrain from investment decisions like the ones that he claimed resulted in the loss of the account funds.

A separation agreement is "to be construed in accordance with justice and common sense and the probable intention of the parties." Whelan v. Frisbee, 29 Mass. App. Ct. 76, 81 (1990). A provision need not be "a paradigm of clarity" to be "sufficient to apprise the parties of their respective obligations under the agreement." Id. In this case, the college account provision states that the father "shall preserve these funds for the future educational expenses of the minor children" (emphasis added). "The word 'shall' is ordinarily interpreted as having a mandatory or imperative obligation" (citation omitted). Hashimi v. Kalil, 388 Mass. 607, 609 (1983). Although the provision permits the father "to invest and re-invest the funds in any manner he so chooses," it would defy common sense, in light of the preceding sentence, to interpret the father's latitude as unlimited. The intention underpinning this language was not to give the father carte

5

blanche to "invest" his children's college money in lottery tickets, for example, or at the racetrack. If such careless or reckless financial decisions could be considered "preserv[ation]" of the children's college funds, it would render the "shall preserve" directive illusory. Cf. Cavanagh v. Cavanagh, 490 Mass. 398, 415 (2022) (judge's interpretation of separation agreement -- which, in effect, allowed father to unilaterally avoid his obligation to pay for child's education by refusing to agree to any school proposed by mother -- was not reasonable interpretation because it rendered father's payment obligation illusory). The judge did not err in determining that the college account provision constituted a "clear and unequivocal command," Birchall, petitioner, 454 Mass. at 853, to manage the account funds with reasonable care.

Nor did the judge err in finding clear and convincing evidence that the father disobeyed this command by engaging in injudicious investment and reinvestment of those funds. The father contends that he permissibly invested the account funds as he pleased -- in cryptocurrency, cannabis, and other volatile stocks -- and that his investment choices resulted in the loss of the funds. However, the judge specifically found "not credible" the father's testimony about losing the funds through bad investments and noted his failure to produce documentation to support his testimony. "We accord the credibility

6

determinations of the judge who 'heard the testimony of the parties . . . [and] observed their demeanor' . . . the utmost deference."  Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n.3 (2006), quoting Pike v. Maguire, 47 Mass. App. Ct. 929, 929 (1999).  "In a bench trial credibility is 'quintessentially the domain of the trial judge [so that his] assessment is close to immune from reversal on appeal except on the most compelling of showings.'"  Prenaveau v. Prenaveau, 81 Mass. App. Ct. 479, 496 (2012), quoting Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995).  Here, implicit in the judge's finding is his determination that the father failed to "preserve" the account funds not by investing them unwisely, but by spending them, moving them, or otherwise withholding them from the children. The father has offered no reason for us to conclude that the judge's credibility finding was clearly erroneous, and we see no abuse of discretion in the judge's conclusion that the father was in contempt.  See Bisienere v. Buccino, 36 Mass. App. Ct. 749, 754 (1994) (affirming contempt judgment where trial judge found "defendant's testimony lacked credibility" and financial documents were inadequate to prove inability to satisfy judgment).

3.  The father's ability to pay.  A finding of contempt "would constitute an abuse of discretion if findings of fact were not supported by the record or conclusions failed to

7

reflect consideration of applicable legal principles." Greenberg v. Greenberg, 68 Mass. App. Ct. 344, 348 (2007). The judge's rationale must be apparent in his findings and rulings. See Rosenberg v. Merida, 428 Mass. 182, 189 (1998) (vacating and remanding in absence of findings concerning support amount in modification action, "[b]ecause . . . we cannot determine if the judge followed the approach that we have prescribed"). A defendant's present ability to pay is a prerequisite to a finding of civil contempt. See Aroesty v. Cohen, 62 Mass. App. Ct. 215, 220 (2004); Larson v. Larson, 28 Mass. App. Ct. 338, 340 (1990) ("the defendant must be found to have the ability to pay at the time the contempt judgment enters"). "The judge may order the judgment debtor to pay only if the judge finds that he has the ability to pay the judgment, at least in part." Birchall, 454 Mass. at 852. Because the father's disobedience must be "clear and undoubted," so too must be his ability to pay. Id.

The judge's finding of ability to pay ordinarily must be "express." Department of Revenue Child Support Enforcement v. Grullon, 485 Mass. 129, 134 (2020), quoting Turner v. Rogers, 564 U.S. 431, 448 (2011). In a contempt proceeding involving noncompliance with a financial order contained in a Probate and Family Court judgment, the defendant bears the burden of proving inability to pay. See Birchall, 454 Mass. at 850 n.13; Diver v.

8

Diver, 402 Mass. 599, 603 (1988); O'Connell v. Greenwood, 59 Mass. App. Ct. 147, 154 (2003); G. L. c. 215, § 34.

In this case, neither the contempt order nor the modification judgment contains an ultimate finding expressly stating that the father had the ability to pay the total lump-sum amount of $55,868.02. However, the absence of such a finding is not fatal on this record. The judge made detailed subsidiary findings addressing the factors relevant to the father's ability to pay, including his income, expenses, and liabilities. The judge found that the father's financial disclosures lacked credibility for several reasons: the father had not amassed any notable debt despite claiming to be operating at a significant weekly deficit for many years, failed to report substantial perquisite or in-kind income received from his father (who also happened to be his employer[2]), and failed to disclose the balance of a retirement account to which he has been contributing for approximately ten years. In light of the father's lack of credibility regarding his finances, the judge permissibly drew adverse inferences against him when assessing his ability to pay. See Crowe v. Fong, 45 Mass. App. Ct. 673,

---

[2] The judge found that the father, who works for his father's company, had not received a single raise since the parties' divorce, despite that other employees who work for the same company have received several raises during that time frame.

9

678-679 (1998). See also Croak v. Bergeron, 67 Mass. App. Ct. 750, 755-756 (2006); Salten v. Ackerman, 64 Mass. App. Ct. 868, 872-873 (2005); Grubert v. Grubert, 20 Mass. App. Ct. 811, 821-822 (1985). It is apparent from the judge's detailed subsidiary findings that the judge found the father had failed to demonstrate his inability to pay. See Diver, 402 Mass. at 603. Accordingly, we discern no error in the judge's ultimate contempt finding against the father.[3]

The father also argues that the judge failed to make the findings required by the Child Support Guidelines to support an order that he pay more than fifty percent of the children's college expenses. See Child Support Guidelines § II (G) (3) (Oct. 2021) ("No parent shall be ordered to pay an amount in excess of fifty percent of the undergraduate, in-state resident costs of [UMass Amherst], unless the Court enters written findings that a parent has the ability to pay a higher amount"). This argument may have some force in light of an ambiguity in

_____

[3] The father argues that the judge's order with respect to the college account provision modified the parties' separation agreement, which survived as an independent contract, and therefore required something more than a material change of circumstances. See DeCristofaro v. DeCristofaro, 24 Mass. App. Ct. 231, 235-236 (1987). This argument fails for two reasons. First, the order did not modify the parties' separation agreement, but rather was a remedy intended to enforce the terms of that agreement. Second, because the provision concerned an issue "relating to the children," by the very terms of the separation agreement, it was merged into the divorce judgment.

the modification judgment.  As written, the judgment requires the father to pay one-half of the total lump sum directly to each child's college and, "[a]fter making" those lump-sum payments, to pay one-third of the children's college expenses (capped at one-third of the cost of UMass Amherst).[4]  It is unclear whether the judge intended for the lump-sum payments to be (1) applied toward the father's obligation to pay for one-third of the children's college expenses (with the father's total payments, including each lump sum and subsequent payments, capped at one-third of the cost of UMass Amherst), or (2) applied in addition to his obligation to pay for one-third of the cost of UMass Amherst.  To the extent that the judge intended the latter result, if the father's total payments toward each child's college expenses (including the lump sum and subsequent payments) exceeded the fifty-percent cap set forth in the Child Support Guidelines, the judge was required to make the specific finding that the father is able to pay more than the fifty-percent cap.  The judge did not make such a finding.  We

---

[4] The father argues that the judge erred in ordering him to pay "the higher cost of Coastal Carolina University" where, contrary to the separation agreement, the mother did not consult the father regarding the older child's choice of college.  This argument is nonsensical where the judge ordered the father to pay one-third of college costs -- including tuition, fees, room, and board, minus any financial aid -- "based on the in-state resident costs of [UMass Amherst]."

therefore remand the matter for the judge to clarify the modification judgment regarding the application of the lump-sum payments to the father's obligation to pay for one-third of the children's college expenses and, if necessary, to make further findings as to the father's ability to pay.

Conclusion.  The contempt finding dated September 9, 2022, and the modification judgment dated June 18, 2024, are affirmed to the extent the father was found guilty of civil contempt and ordered to pay $55,868.02 toward the children's college costs. The modification judgment is otherwise vacated and the matter is remanded to the Probate and Family Court for clarification, and further findings, if necessary, consistent with this memorandum and order.

So ordered.

By the Court (Massing, Neyman & Smyth, JJ.[5]),

Clerk

Entered:  April 29, 2026.

---

[5] The panelists are listed in order of seniority.

12