## Richard G. Birchall, petitioner.

Suffolk. June 9, 2009. - September 23, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Habeas Corpus. Judgment,* Default. *Waiver. Supreme Judicial Court,* Superintendence of inferior courts. *Practice, Civil,* Contempt. *Jurisdiction,* Contempt. *Contempt. Due Process of Law,* Hearing. *Words,* "Supplementary process proceeding."

Discussion of the law governing supplementary process proceedings. [843-845]

A petitioner seeking habeas corpus relief pursuant to G. L. c. 248, § 1, from his detention in a house of correction following an order holding him in civil contempt for his failure to pay the judgment in a civil action, waived such a claim both by failing to comply with the single justice's order to submit the relevant transcripts and by failing to argue the claim in his brief to the full court; however, G. L. c. 224, § 18, did not preclude the petitioner from seeking relief pursuant to the general superintendency authority of the full court under G. L. c. 211, § 3, although, in the circumstances, such review was confined to whether the petitioner could continue to be incarcerated for civil contempt and was limited to issues of law. [845-847]

This court clarified the sentences that may be imposed under G. L. c. 224, § 18, on a judgment debtor following a finding of civil contempt, and the continuing burden of proof on the judgment creditor to demonstrate that the judgment debtor has the ability to pay. [847-851]

This court revised the standard for a finding of civil contempt to require that such a finding be supported by clear and convincing evidence of disobedience of a clear and unequivocal demand. [851-853]

In supplementary process proceedings, the trial court judge, in finding that a petitioner was presently able to pay a judgment against him, was not required first to identify specific assets that were available to the petitioner to pay the judgment [853]; further, the judge provided the petitioner the process he was due before finding him in civil contempt [853-855].

This court remanded a civil contempt matter to the District Court and directed that a hearing be held within thirty days of the issuance of the rescript, in order to determine whether a judgment creditor has proven by clear and convincing evidence that the judgment creditor has the current ability to pay the judgment, in whole or in part, and for the release of the judgment debtor from confinement in the absence of such proof. [855]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on March 3, 2009.

The case was reported by *Cordy,* J.

*Richard J. Cohen* for the petitioner.

*Jennifer E. Vecchi* for the intervener.

GANTS, J. Richard G. Birchall filed a petition for a writ of habeas corpus in the county court pursuant to G. L. c. 248, § 1, seeking relief from his continued detention in the Barnstable County house of correction, where he has been held since April 19, 2007. The petitioner asserts that his incarceration is pursuant to a contempt "order" of a judge in the Orleans Division of the District Court Department that never issued and does not appear on the court docket. He also argues that any contempt order was unlawful because it was based on his failure to pay a civil judgment for which there has been no identified asset (or res) to be liquidated or turned over to the judgment creditor and for which he has no income to pay. The petitioner further contends that the judge lacked jurisdiction to sentence him to jail for contempt, as was done here, during supplementary process proceedings, without giving him a reasonable time to pay the judgment, or a fair hearing on the charge of contempt, in accordance with constitutional principles of due process and the requirements of certain statutes governing supplementary process proceedings, specifically, G. L. c. 224, §§ 15, 16, and 18.

A single justice of this court reserved and reported the case to the full court without a decision. For reasons that follow, we conclude that the petitioner is not entitled to the issuance of a writ of habeas corpus at this time. We order that an evidentiary hearing be held in the District Court, within thirty days of the issuance of the rescript in this case, to determine whether the judgment creditor in this case, Suzanne D'Amour, has proven by clear and convincing evidence that the petitioner has the current ability to pay the judgment, in whole or partial payments. If the judgment creditor fails to meet this burden of proof, the petitioner shall be released from confinement and an order shall enter in the District Court dismissing the supplementary process action.

We also take this opportunity to revise the standard for a finding of civil contempt in all actions, not only supplementary process actions. Until now, the standard was a clear and undoubted disobedience of a clear and unequivocal command, proved by a preponderance of the evidence. After the issuance of the rescript in this case, we require that a civil contempt

finding be supported by clear and convincing evidence of disobedience of a clear and unequivocal command.

*Background.* On July 21, 2005, a separate and final default judgment in the amount of $2,752,934.54 entered in the Superior Court against the petitioner and in favor of D'Amour.[1] The petitioner did not appeal from the judgment, and on November 16, 2005, execution on the judgment issued in the amount of $2,854,542.74. On December 20, 2006, D'Amour initiated supplementary process proceedings, pursuant to G. L. c. 224, § 14, in the Orleans Division of the District Court Department to recover on the judgment. On February 1, 2007, after the petitioner failed to appear for a scheduled examination, a capias issued for his arrest. He was arrested on April 18 and brought before the court on April 19. A judge (a different judge from the one who imposed the contempt order we review in this case) deemed his failure to appear for the scheduled examination a contempt of court,[2] and ordered the petitioner held in the Barnstable County house of correction until April 23, 2007, the date set for the continuation of the supplementary process examination, unless bailed by a master in chancery.[3] The petitioner filed a motion the same day to reconsider the mittimus, which was denied. The petitioner did not appeal from the denial and remained in custody until the examination.

[1] On December 20, 2000, Suzanne D'Amour filed a complaint against the petitioner in the Superior Court for conversion, misrepresentation, misappropriation of her funds, and breach of fiduciary duty. On March 18, 2005, a default judgment as to liability alone entered against the petitioner because of his "obdurate noncompliance with discovery and pattern of recalcitrance in violation of court orders." On June 14, 2005, an order entered assessing damages against the petitioner in the amount of $2,752,934.54.

[2] Under G. L. c. 224, § 14, a judgment creditor, after filing in court an application for supplementary process, may serve a summons on the judgment debtor requiring the debtor to appear at a designated time and place, and submit to an examination regarding the debtor's property and ability to pay the judgment. A debtor's failure, "without reasonable excuse," to appear or answer questions under oath at the scheduled examination "shall constitute a contempt of court." *Id.*

[3] "[M]asters in chancery" are judicial officials appointed by the Governor to act throughout the Commonwealth. G. L. c. 221, § 53. Among other things, a master of chancery is authorized to set bail or to release an individual on personal recognizance. See G. L. c. 276, §§ 57, 58. However, under G. L. c. 224, § 18, a master of chancery may not issue bail to a judgment debtor charged with contempt for an amount less than the amount of the judgment debt.

Evidence was taken over nine days (from April 23 until May 7, 2007) at the supplementary process examination. On April 27, the judge allowed a motion to withdraw filed by the petitioner's counsel, and the hearing continued with the petitioner proceeding pro se. At the end of each day of the hearing, the petitioner was returned to the jail, and a mittimus issued for his return on the next scheduled day of the hearing.

On the last day of the evidentiary hearing, D'Amour filed an amended complaint of fraud under G. L. c. 224, § 19, asserting that the petitioner had taken multiple steps to conceal, from herself and from the court, his assets in bank accounts in other countries since judgment had entered against him in 2005.[4]

On May 8, in his memorandum and order regarding the fraud charges, the judge found the petitioner guilty of fraud under G. L. c. 224, § 19, finding by a preponderance of the evidence that the petitioner had fraudulently conveyed, concealed, or otherwise disposed of part of his property with the intent either to secure it to his own use or to defraud D'Amour of it. The judge sentenced the defendant to thirty days in the house of correction for this fraud, with credit for time served (twenty days).[5]

Also on May 8, in a separate memorandum and order, the judge determined by a preponderance of the evidence that the petitioner had the ability to pay the judgment against him in full or in partial payments (together with interest and costs), and ordered payment forthwith. This order made no mention of contempt, but the judge, after announcing his orders to the parties at the May 8 hearing, told the petitioner that he would remain incarcerated after the completion of his thirty-day sentence until the judgment was paid.[6] The petitioner did not appeal from his

---

[4]D'Amour had filed an earlier complaint of fraud against the petitioner, pursuant to G. L. c. 224, § 19, which was dismissed on May 3, 2007, with leave to amend, on the ground that the complaint lacked the particularity required by Mass. R. Civ. P. 9 (b), 365 Mass. 751 (1974).

[5]Under G. L. c. 224, § 19, if a natural person is found guilty of fraud, "he shall be sentenced to imprisonment in the common jail for not more than one year."

[6]The actual language used by the judge was, "You will, however, remain incarcerated pending a resolution, if any, of the order to pay, and that is it." The assistant clerk issued an order of commitment on May 8 that characterized the offense as "civil contempt" and ordered that the petitioner be held in the house of correction until the next hearing on May 15 unless he paid the

fraud conviction.[7] Nor, until he filed this petition, did he seek appellate review of the order of civil contempt.

The petitioner has been held in the Barnstable County jail since April 19, 2007. His mail and telephone correspondence have been severely restricted and closely monitored.[8] Since the entry of the orders described above, at least twenty-three hearings have been held in the District Court at which the petitioner and D'Amour have been present. These hearings were electronically recorded, but, without transcripts or copies of the recordings themselves, we have no way to confirm the statements made in regard to the petitioner's continued confinement for civil contempt. According to the petitioner, virtually each time he has appeared before the judge, the judge has inquired whether he was prepared to pay the judgment, and he has responded that he lacks the financial means to pay. It appears from the District Court docket that the most recent hearing took place on April 28, 2009, and lasted six minutes. The docket also discloses that the petitioner filed motions requesting his release from incarceration on May 24, 2007; October 19, 2007; January 23, 2008 (this was a renewed motion for release); and June 5, 2008. All were unsuccessful and, with the exception of the first, were denied without a hearing.

In July, 2007, D'Amour filed a motion seeking to transfer funds held in a Swiss bank account to satisfy the judgment against the petitioner. On August 31, 2007, the petitioner's mother (since

---

amount stated in the execution, with interest and costs. At the May 15 hearing, the judge told the petitioner that he will "be held in contempt for failure to pay this judgment or any part of it."

[7]Under G. L. c. 224, § 19, the petitioner could have appealed his judgment of conviction of fraud to the Superior Court. Because he waived his right to appeal this conviction, and has completed his sentence, we need not consider whether the judge erred in finding the petitioner guilty and sentencing him to jail based on a preponderance of the evidence rather than proof beyond a reasonable doubt. Compare *Little* v. *Mathews*, 317 Mass. 422, 425 (1944) (because G. L. c. 224, § 19, creates civil action at law, burden of proof is on plaintiff, which "is satisfied by proof by a preponderance of the evidence"), with *Andrews, petitioner*, 368 Mass. 468, 486-491 (1975) (due process requires proof beyond reasonable doubt for civil commitment as sexually dangerous person).

[8]The petitioner's motion to receive a furlough to permit him to attend his mother's funeral service and burial was allowed on January 10, 2008, on the condition that he attend, in handcuffs, accompanied by the deputy sheriff and with orders that he speak to no one except the church pastor. The petitioner withdrew his motion for furlough the following day.

deceased) conveyed the account to D'Amour, and it was liquidated over a period of approximately six months. As a result of this conveyance, plus the conveyance of at least one item of property (a Rolex watch) and a personal injury settlement belonging to the petitioner, the judgment was credited, on March 14, 2008, in the amount of $1,536,394.19. The current balance on the judgment is $1,318,148.55 (plus interest and costs).

At a hearing on October 14, 2008, the judge considered a motion filed by the petitioner on August 13, with an accompanying memorandum, requesting a further hearing on the issue of contempt. The petitioner reminded the judge (and the judge agreed) that the order entered on August 13, 2008, stated that "[t]he Court will continue to hold regular hearings to determine whether [the petitioner] is prepared to purge himself of the contempt found." The petitioner contended that, pursuant to G. L. c. 224, § 18, he was entitled to a full, speedy hearing every thirty days and that § 18 did not contemplate such a hearing to consist simply of the question: "Are you prepared to purge?" The petitioner argued that he was sentenced on May 8, 2007, essentially, to ten more days of confinement for the fraud conviction, but was not brought before the court on May 18, and there was no motion for contempt filed in May. Nor, he contended, had a separate hearing on the issue of contempt ever taken place. The petitioner noted that the memorandum and order entered on May 22, 2008, stated that the petitioner "was found in contempt of an order of May 9th, 2007," but asserted, correctly, that the docket entry sheets for the supplementary proceedings (which numbered twenty-five pages at the time of oral argument) did not reflect a contempt order.

In response to these statements, counsel for D'Amour responded: "Your Honor, I believe we have been over this about four or five times in the past. And, Your Honor, it's my understanding that the question for him today is whether he is ready to purge himself of the contempt."

After further arguments, the judge stated that another hearing would be set up within thirty days (on or before November 13, 2008). When the petitioner continued to maintain that his incarceration was unlawful, the judge advised him to "file an appeal with the Supreme Judicial Court, go to the Appeals Court, go to

the United States District Court, do something. Don't just come in here and talk."

On March 3, 2009, the petitioner filed his petition for a writ of habeas corpus with the county court. In a supplemental brief he filed the same day, the petitioner also sought relief under the "general superintendency" authority of this court under G. L. c. 211, § 3. By order of the single justice, D'Amour was permitted to intervene, and she has filed a brief with this court in opposition to the issuance of the writ. Our consideration of the petition, and relief requested, as has been stated, is by way of the single justice's reservation and report.

The single justice ordered the petitioner to file with the clerk for the Commonwealth "a transcript of the April 19, 2007, hearing in the District Court, and transcripts of any other hearings in the District Court on which [the petitioner] relies in his petition for a writ of habeas corpus." The petitioner has not complied with the order of the single justice to produce the April 19 transcript and, in fact, has not submitted any transcripts in support of his position that he is entitled to immediate release from confinement.[9]

*Discussion.* a. *Supplementary process proceedings.* To provide context to our discussion of the issues presented in this case, we first briefly explore the rather esoteric law of supplementary process proceedings. Until 1855, when the Legislature enacted St. 1855, c. 444, entitled, "An Act to abolish imprisonment for debt and to punish fraudulent debtors," a debtor was liable to be imprisoned for any debt of ten dollars or more. See *Howard* v. *Roach*, 226 Mass. 80, 82 (1917). "The former poor debtor law of this Commonwealth began with the absolute right of a judgment creditor at common law to arrest the debtor upon the execution and imprison him for debt, and gradually through the years set limitations and restrictions upon that right, by which a debtor without property . . . might gain freedom from liability to imprisonment by taking the poor debtor's oath." *Little* v.

---

[9]On an affidavit of indigency and a request pursuant to G. L. c. 261, §§ 27A and 27G, the single justice waived in full the petitioner's fees and costs in connection with filing his petition in the county court. We mention this only because, if the extra costs of obtaining the transcript, as ordered by the single justice, were prohibitive, the petitioner could have filed a motion for funds to transcribe the electronic recordings made of the hearings.

*Mathews*, 317 Mass. 422, 424 (1944). While common-law judgments were enforced through the poor debtor law, "decrees in equity for the payment of money were generally enforced by proceedings for contempt, in which the ability of the defendant to pay was the main question." *Id.* "By the statute of 1927, now contained in G. L. (Ter. Ed.) c. 224, the equity practice of punishment for disobedience gained an almost complete victory over the common law practice of imprisonment for debt." *Id.* at 425.

The "manifest design" of St. 1927, c. 334, entitled, "an Act to revise the poor debtor law by providing for supplementary proceedings in civil actions" (act), "is to provide a searching inquiry into the ability of the judgment debtor to pay his legal obligation, to relieve him from harassment if found unable to pay, but to compel him to do what an honest man ought to be willing to do if found able to pay in whole or in part." *Giarruso* v. *Payson*, 272 Mass. 417, 420 (1930). Under the act, after obtaining a judgment, the judgment creditor may file in court an application for supplementary process. G. L. c. 224, § 14. A summons may then issue requiring the judgment debtor to submit to an examination under oath as to his "property and ability to pay." *Giarruso* v. *Payson*, *supra* at 418. G. L. c. 224, § 15. If the judge, after a full hearing at which the judgment creditor bears the burden of proof, finds that the judgment debtor, excluding certain property and income exempted by statute, is able to pay the judgment in full or by partial payments, the judge may order the debtor to pay the judgment, plus interest and costs, either in full or through partial payments over time. G. L. c. 224, § 16. If the judge finds that the debtor has no nonexempt property and is unable to pay the judgment, either in full or through partial payments, the proceedings may be dismissed. *Id.* "The court may at any time renew, revise, modify, suspend or revoke any order made in any proceedings . . . ." *Id.*

"Failure, without just excuse, to obey any lawful order of the court in supplementary proceedings shall constitute a contempt of court." *Id.* "Contempt of court under this chapter shall be punished by a fine of not more than twenty dollars or by imprisonment in the common jail for not more than thirty days." G. L. c. 224, § 18. "A debtor or creditor in custody, charged with contempt, shall be entitled to a speedy hearing therefor . . . ."

*Id.* "A sentence for contempt shall not end the proceedings, nor any order made therein, and future violations of the order upon which the sentence was founded, or any other order, may likewise be dealt with as for contempt. The court shall retain jurisdiction of supplementary proceedings until an order shall be made expressly dismissing them." *Id.* Apart from a judgment for fraud under G. L. c. 224, § 19, "[t]here shall be no appeal from any judgment, order or sentence under the provisions of this chapter . . . ." G. L. c. 224, § 18.

b. *Jurisdiction under G. L. c. 248, § 1, and G. L. c. 211, § 3.* The petition filed in the county court on March 3, 2009, sought the petitioner's immediate release and an injunction against his continued detention. While the petitioner sought to accomplish this result primarily by obtaining a writ of habeas corpus under G. L. c. 248, § 1, as has been stated, the supplemental brief he filed the same day alternatively sought relief under the "general superintendency" authority of this court under G. L. c. 211, § 3.

D'Amour argues that the petitioner effectively seeks an appeal from the judge's orders in a supplementary process proceeding, which is specifically precluded under G. L. c. 224, § 18. We need not consider whether the statutory prohibition of any appeal "from any judgment, order or sentence under the provisions of [c. 224]" precludes the petitioner from seeking habeas corpus relief, because we conclude that the petitioner has waived his habeas corpus claim, both by failing to comply with the single justice's order to submit "a transcript of the April 19, 2007, hearing in the District Court, and transcripts of any other hearings in the District Court on which [the petitioner] relies in his petition for a writ of habeas corpus," and by failing to argue this claim in his brief to the full court.[10] See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975) ("The appellate court need not pass upon questions or issues not argued in the brief"). We consider only whether G. L. c. 224, § 18, precludes review under G. L. c. 211, § 3, and conclude that it does not.

We have described our superintendence power as follows:

"General Laws c. 211, § 3, 'confers on this court the

---

[10]Indeed, the petitioner's brief seeks only that we exercise our general superintendence powers.

power of "general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided." This discretionary power of review has been recognized as "extraordinary" and will be exercised only in "the most exceptional circumstances." ' *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 706 (1990), quoting *Costarelli* v. *Commonwealth*, 374 Mass. 677, 679 (1978). Relief under G. L. c. 211, § 3, may not be sought 'merely as a substitute for normal appellate review.' *Francis* v. *District Attorney for the Plymouth Dist.*, 388 Mass. 1009, 1010 (1983), quoting *Soja* v. *T.P. Sampson Co.*, 373 Mass. 630, 631 (1977). A party seeking review under c. 211, § 3, must 'demonstrate both a substantial claim of violation of [his or her] substantive rights and error that cannot be remedied under the ordinary review process.' *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue, supra*, quoting *Dunbrack* v. *Commonwealth*, 398 Mass. 502, 504 (1986). Parties seeking relief must demonstrate that they have no other legal remedy to pursue and, therefore, a petition under G. L. c. 211, § 3, is the only alternative. See *Taylor* v. *Newton Div. of the Dist. Court Dep't*, 416 Mass. 1006 (1993); *Roullett* v. *Quincy Div. of the Dist. Court Dep't*, 395 Mass. 1008 (1985)."

*McMenimen* v. *Passatempo*, 452 Mass. 178, 184-185 (2008), quoting *McGuinness* v. *Commonwealth*, 420 Mass. 495, 497 (1995).

In reaching our conclusion, we recognize that we will rarely employ our superintendence power to review rulings where the Legislature has expressly stated that there shall be no appeal. See *O'Leary* v. *Education Resources Inst., Inc.*, 441 Mass. 1018, 1019 (2004); *Hurley* v. *Superior Court Dep't of the Trial Court*, 424 Mass. 1008, 1009 (1997). The phrase "[t]here shall be no appeal" surely bars any ordinary appeal from an order in a supplementary process proceeding. See *Marram* v. *Fourth Dist. Court of E. Middlesex*, 353 Mass. 770 (1968); *Swan* v. *Justices of the Superior Court*, 222 Mass. 542 (1916). It equally surely bars any attempt to seek review of the underlying judgment whose payment is at issue in the supplementary process proceeding. See *O'Leary* v. *Education Resources Inst., Inc., supra*.

However, it "presumably was not intended to deprive this court of its general supervisory power under G. L. c. 211, § 3." *Giarruso* v. *Payson*, 272 Mass. 417, 421 (1930). See *Swan* v. *Justices of the Superior Court, supra* at 544 ("It would require words unmistakable in import to express a legislative purpose to deprive parties" of potential relief provided by writ of extraordinary nature).

Our review is confined to whether the petitioner may continue to be incarcerated for civil contempt. This case is precisely the kind of rare case that may justify the exercise of superintendence power. The petitioner has already been held in custody for more than two years based on the judge's finding in 2007 that he can afford to pay a judgment that he contends he is not able to pay, and if nothing changes, there is no apparent end to the duration of his custody.

The petitioner's inexplicable failure to obey the order of the single justice to provide this court with the transcript of the April 19, 2007, hearing or to submit any other transcript on which he relies, narrows the scope of, but does not preclude, our review under G. L. c. 211, § 3. Because the record on appeal does not include these transcripts and because we may not consider evidence that does not appear in the record, we accept the judge's findings, after nine days of hearings, in his May 8, 2007, memorandum and order, including his conclusion that the petitioner was able to pay the judgment and that the evidence painted "an inferred portrait of a [petitioner] who has expended considerable time and energy in creating ways to render his assets, and those of . . . D'Amour's, difficult to trace and locate." See *Sodones* v. *Sodones*, 366 Mass. 121, 130-131 & n.9 (1974) (failure to report evidence limits appellate review of contemnor's claim that he was unable to pay). Our review, then, under G. L. c. 211, § 3, shall be limited to issues of law.

c. *Civil contempt.* Although the docket of the supplementary process proceeding may not reflect it, it is plain from the record that the petitioner was found in civil contempt on May 8, 2007, for his failure to pay the judgment, and that he has been held in custody for his civil contempt since May 18, 2007, when he completed his thirty-day sentence for fraud in violation of G. L. c. 224, § 19. "[T]he purpose of civil contempt is remedial: its

aim is to coerce the performance of a required act by the disobedient party for the benefit of the aggrieved complainant." *Sodones* v. *Sodones, supra* at 129-130. "The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.' " *International Union, United Mine Workers* v. *Bagwell*, 512 U.S. 821, 828 (1994) (*United Mine Workers*), quoting *Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911) (*Gompers*). In contrast, "[t]he purpose of criminal contempt . . . is punitive: its aim is to vindicate the court's authority and to punish the contemnor for doing a forbidden act or for failing to act as ordered." *Sodones* v. *Sodones, supra* at 130. See *United Mine Workers, supra* at 827-828. When the contemnor is held in custody, there is generally a simple test to determine whether the sanction is civil or criminal. It is civil if "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus 'carries the keys of his prison in his own pocket.' " *Id.* at 828, quoting *Gompers, supra*. See *Maggio* v. *Zeitz*, 333 U.S. 56, 68 (1948). It is criminal if the contemnor receives a fixed sentence of imprisonment, which he cannot avoid or abbreviate through compliance with the court's order. See *United Mine Workers, supra* at 828-829.

General Laws c. 224, § 18, speaks of contempt in two separate paragraphs. In the first paragraph, it provides: "Contempt of court under this chapter shall be punished by a fine of not more than twenty dollars or by imprisonment in the common jail for not more than thirty days." In the third paragraph, it provides: "A sentence for contempt shall not end the proceedings, nor any order made therein, and future violations of the order upon which the sentence was founded, or any other order, may likewise be dealt with as for contempt." In interpreting the meaning of these provisions, we look to the intent of the Legislature "ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Industrial Fin. Corp.* v. *State*

*Tax Comm'n,* 367 Mass. 360, 364 (1975), quoting *Hanlon* v. *Rollins,* 286 Mass. 444, 447 (1934). Where possible, we seek to harmonize statutory provisions, recognizing that the Legislature did not intend one provision of a statute to contradict another. See *Locator Servs. Group, Ltd.* v. *Treasurer & Receiver Gen.,* 443 Mass. 837, 859 (2005).

Applying these principles of statutory construction, we interpret the first provision to mean that, when a judge finds a judgment debtor in contempt for his failure to pay a judgment that he is able to pay, the judge may jail the debtor for a period not to exceed thirty days, with the proviso that the debtor shall be released from jail if he purges his contempt by paying the judgment in full, with interest and assessed costs. With this proviso, which we find implicit in the statutory purpose to enforce payment of the judgment, the jail term is a coercive civil contempt sanction rather than a punitive criminal contempt sanction, because the contemnor retains the ability to obtain his release from custody by paying an amount he is able to pay. See *United Mine Workers, supra* at 828 ("Imprisonment for a fixed term . . . is coercive when the contemnor is given the option of earlier release if he complies").[11]

We interpret the second provision to mean that, if the judgment debtor has failed to purge his contempt during the maximum thirty-day term of civil contempt, the judge, after hearing, may impose another thirty-day term of civil contempt, with the same proviso. Until the judgment debtor purges his contempt or the supplementary process proceedings otherwise end, the judge may continue to impose consecutive civil contempt terms of imprisonment, none greater than thirty days, each with the same proviso. In essence, a judge who finds a judgment debtor in civil contempt because he has failed to pay a judgment that he has the ability to pay must hold an evidentiary hearing every thirty days to determine whether the debtor should again be found in contempt. The burden of proving that the debtor has the ability to

---

[11]Imposition of the fine would not transform the sanction into a criminal contempt, because we interpret this provision to require payment of the fine in thirty days, with the proviso that it need not be paid if the judgment, with interest and assessed costs, is paid in full before payment is due. We do not dwell on the fine because it is so insignificant a sanction (no more than twenty dollars) that it is unlikely to be imposed.

pay remains with the judgment creditor, see G. L. c. 224, § 16, but the judge may take judicial notice of the evidence that has earlier been admitted during the supplementary process proceedings. Pragmatically, after the examination, the burden of production shifts to the debtor to furnish evidence that the debtor, because of a change in circumstances (which may include partial payment of the judgment), no longer has the ability to pay the judgment.[12] The burden of proving that the debtor has the ability to pay never shifts from the judgment creditor.[13]

Apart from deciding whether the judgment debtor continues to have the ability to pay the judgment, the judge, in deciding whether to renew the civil contempt finding, must also "make an individualized determination as to whether there exists a realistic possibility that the contemnor will [comply]." *Commodity Futures Trading Comm'n* v. *Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1530 (11th Cir.), cert. denied sub nom. *Weiss* v. *Commodity Futures Trading Comm'n*, 506 U.S. 819 (1992), quoting *In re Grand Jury Proceedings (Howald)*, 877 F.2d 849, 850 (11th Cir. 1989). "As long as the judge is satisfied that the coercive sanction might yet produce its intended result, the confinement may continue. But if the judge is persuaded . . . that the contempt power has ceased to have a coercive effect, the civil contempt remedy should be ended." *Simkin* v. *United States*, 715 F.2d 34, 37 (2d Cir. 1983). "While each

---

[12]This conforms with Federal common law, where, after a court has found that the contemnor was able to comply with its order, the contemnor bears the burden of producing evidence that he is *presently* unable to comply. See *United States* v. *Rylander*, 460 U.S. 752, 757 (1983). "Once the defendant satisfies his burden of production, the burden of persuasion shifts back to the side seeking the contempt order." *United States ex rel. Thom* v. *Jenkins*, 760 F.2d 736, 740 (7th Cir. 1985).

[13]As a matter of common law, the burden of proof for civil contempt in ordinary commercial cases, like in the supplementary process setting, is on the complainant. See, e.g., *Judge Rotenberg Educ. Ctr., Inc.* v. *Commissioner of the Dep't of Mental Retardation (No. 1)*, 424 Mass. 430, 443 (1997); *United States Time Corp.* v. *G.E.M. of Boston, Inc.*, 345 Mass. 279, 282 (1963). The Legislature has assigned a different burden, however, in family law matters concerning, for instance, arrearages in alimony and child support. See G. L. c. 215, § 34 ("At the hearing of a complaint for civil contempt, the defendant shall have the burden of proving his or her inability to comply with the preexisting order or judgment of which the complaint alleges violation"); *Diver* v. *Diver*, 402 Mass. 599, 603 (1988); R.W. Bishop, Prima Facie Case § 63.3, at 299 (5th ed. 2005).

passing month of incarceration may strengthen [the contemnor's] claim of inability . . . many months or perhaps even several years may pass before it becomes necessary to conclude that incarceration will no longer serve the purpose of the civil contempt order." *Commodity Futures Trading Comm'n* v. *Wellington Precious Metals, Inc.*, *supra* at 1531. "It is everywhere admitted that even if he is committed [for civil contempt], he will not be held in jail forever if he does not comply." *Maggio* v. *Zeitz*, 333 U.S. 56, 76 (1948). Indeed, the duration of incarceration for civil contempt for failing to pay a judgment should not exceed the maximum criminal sentence that the contemnor would face were he to be convicted of obtaining the amount of that judgment by larceny or fraud.

A finding that continued incarceration for civil contempt will be futile in coercing the judgment debtor to pay the judgment does not necessarily mean that the debtor will serve no more time in jail. His obstinacy simply means that the civil contempt sanctions have lost any ability to coerce compliance with the court's order to pay the judgment, so that due process no longer permits continued incarceration to rest on a civil contempt finding. If the debtor is to remain in jail, or return to jail, he must be found guilty, after trial, of criminal contempt based on a finding of guilt beyond a reasonable doubt. See *Young* v. *United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987), citing *Gompers*, *supra* at 444 (finding of criminal contempt requires proof beyond reasonable doubt); *Commonwealth* v. *Delaney*, 425 Mass. 587, 596 (1997), cert. denied, 522 U.S. 1058 (1998), citing, inter alia, *Furtado* v. *Furtado*, 380 Mass. 137, 145 (1980); *F.J. Hanshaw Enters., Inc.* v. *Emerald River Dev., Inc.*, 244 F.3d 1128, 1138-1139 (9th Cir. 2001). Only then may the debtor be sentenced to a sanction intended to punish him for his disobedience of the court's order.

General Laws c. 224, § 18, is silent as to the standard that should be employed in determining whether the judgment debtor should be found in civil contempt. In matters other than supplementary process proceedings, we have said, "[t]o constitute civil contempt there must be a clear and undoubted disobedience of a clear and unequivocal command." *Manchester* v. *Department of Envtl. Quality Eng'g*, 381 Mass. 208, 212 (1980),

quoting *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.*, 361 Mass. 35, 36 (1972). See *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 565-566 (1997); *Nickerson* v. *Dowd*, 342 Mass. 462, 464 (1961). "Where the order is ambiguous or the disobedience is doubtful, there cannot be a finding of contempt." *Judge Rotenberg Educ. Ctr., Inc.* v. *Commissioner of the Dep't of Mental Retardation (No. 1)*, 424 Mass. 430, 443 (1997) (*JRC*). We see no reason why this standard should not also apply to civil contempt findings arising from supplementary process proceedings.

Assuming the amount to be paid in the judgment is "clear and unequivocal," the issue of disobedience in supplementary process proceedings will depend on whether the judgment debtor has the ability to pay the judgment, in whole or in part. If he does not have the ability to pay the judgment even in part, then the supplementary process proceedings must be dismissed and there can be no order to pay. G. L. c. 224, § 16. The judge may order the judgment debtor to pay only if the judge finds that he has the ability to pay the judgment, at least in part. The judge may find the debtor in civil contempt for failure to comply with that order only if the debtor's disobedience is "clear and undoubted," which means that the debtor's ability to pay is also "clear and undoubted."

While we have declared that a finding of civil contempt requires "a clear and undoubted disobedience of a clear and unequivocal command," *JRC*, *supra*, quoting *Warren Gardens Hous. Coop.* v. *Clark*, 420 Mass. 699, 700 (1995), we have also said, "The burden of proof in a contempt action is on the complainant to prove its case by a preponderance of the evidence." *JRC*, *supra*. See *Manchester* v. *Department of Envtl. Quality Eng'g*, *supra*. In short, under our existing standard, a judge may find a person in civil contempt if the judge concludes that it is more likely than not that the person clearly and undoubtedly disobeyed a clear and unequivocal command. We no longer find that the preponderance of the evidence standard adequately characterizes the level of certainty appropriate to justify civil contempt sanctions, especially when those sanctions may include incarceration. The clear and convincing evidence standard better describes the level of certainty that arises from a finding of "a

clear and undoubted disobedience of a clear and unequivocal command." Not only does the clear and convincing standard avoid the risk of confusion inherent in a standard that permits a finding of clear and undoubted disobedience based on a preponderance of the evidence, it also clarifies that the disobedience must be clear, but need not be beyond doubt. This standard conforms with Federal common law, which requires clear and convincing evidence of violation of a Federal court order to hold a defendant in civil contempt. See *Commodity Futures Trading Comm'n* v. *Wellington Precious Metals, Inc.*, *supra* at 1529. See also 3A C.A. Wright, N.J. King, & S.R. Klein, Federal Practice and Procedure § 705 (3d ed. 2004), and cases cited. Therefore, after the issuance of the rescript in this case, we require that, in all cases and not limited to supplementary process actions, a civil contempt finding be supported by clear and convincing evidence of disobedience of a clear and unequivocal command.[14]

The petitioner contends that the judge could not find that he was able to pay the judgment without identifying specific assets that were available to the petitioner to pay the judgment. The act imposes no such requirement, nor shall we. While the judge must conclude by clear and convincing evidence that the petitioner is presently able to pay the judgment, in whole or in part, to find the petitioner in civil contempt, the judge need not identify with specificity which assets are available to the petitioner to pay the judgment. Such a requirement would reward a judgment debtor who successfully conceals his assets from the judgment creditor and the court and allow him by his deception to escape payment of the judgment against him.

The petitioner also contends that the judge found him in civil contempt in violation of due process, claiming that he was denied a fair hearing on the charge of contempt and a reasonable time to pay the judgment. We agree that, before one may be

---

[14]While a judge in a supplementary process proceeding may find a judgment debtor in contempt only by clear and convincing evidence that the debtor has the ability to pay the judgment, at least in part, the judge may continue to apply the preponderance of the evidence standard typically used in civil proceedings to order a judgment debtor to produce property so that it may be taken on the execution, or to transfer, assign, or convey identified assets to the creditor. See G. L. c. 224, § 16.

found in civil contempt for conduct that did not occur in the presence of the judge, one is entitled as a matter of due process to be advised of the charges against him, to have a reasonable opportunity to respond to the charges, and to retain private counsel to represent the alleged contemnor at trial, to testify in his defense at trial, and to call witnesses on his behalf. *Sodones* v. *Sodones*, 366 Mass. 121, 127 (1974), quoting *In re Oliver*, 333 U.S. 257, 275 (1948). We agree that, before one may be found in civil contempt for failure to pay a judgment that he is able to pay, the judge must allow the judgment debtor an adequate time to pay the judgment. Even without the record of hearings in this case, which the petitioner failed to provide, we are satisfied that the judge provided the petitioner the process he was due before finding him in civil contempt.

The petitioner had more than adequate time to pay the judgment before he was found in contempt. The default judgment against him entered on July 21, 2005; the execution against him issued on November 10, 2005; he was found in contempt on May 8, 2007. Cf. *Crystal, petitioner*, 330 Mass. 583 (1953) (Probate and Family Court had no jurisdiction to jail petitioner for civil contempt for failing to hand over more than $100,000 in cash and bonds when decree to transfer this property was issued moments earlier).

The procedures established for civil contempt cases in Mass. R. Civ. P. 65.3, as appearing in 386 Mass. 1244 (1982), do not apply to supplementary process proceedings. See Mass. R. Civ. P. 81 (a) (7), as appearing in 423 Mass. 1412 (1996) (rules of civil procedure do not apply to supplementary process proceedings). Because the act specifically recognizes that a judgment debtor who is able to pay a judgment may be held in contempt for failing to pay, the hearing required under the act is the functional equivalent of a contempt hearing. The petitioner received notice of that hearing, had a reasonable opportunity to respond to the charges and to retain private counsel to represent him at trial,[15] testified in his own defense, and was able to call witnesses on his behalf. Having heard all the relevant evidence during the nine days of the supplementary process hearing, the

---

[15]We recognize that the judge had allowed the motion to withdraw filed by the petitioner's counsel. Without a transcript of the hearing, we cannot determine whether the petitioner opposed his attorney's motion or asked for additional

judge was not obliged to schedule a contempt hearing and hear the same evidence again.

*Conclusion.* The case is remanded to the county court where the following two orders are to be separately entered: (1) an order denying the petition for a writ of habeas corpus; and (2) an order directing that an evidentiary hearing be held in the District Court, within thirty days of the issuance of the rescript in this case, to determine, consistent with this opinion, whether the judgment creditor in this case, Suzanne D'Amour, has proved by clear and convincing evidence that the petitioner has the current ability to pay the judgment, in whole or partial payments. This second order shall go on to state that, if the judgment creditor fails to meet this burden of proof, the petitioner shall be released from confinement and an order shall enter in the District Court dismissing the supplementary process action.

*So ordered.*

time to retain new counsel. Having failed to comply with the single justice's order to furnish all transcripts on which he seeks to rely, the petitioner has waived any claim that the judge denied him a reasonable opportunity to retain new counsel.