Singh, J.
Having obtained a foreign divorce, plaintiff Kimberly Zizza (“Kimberly”) and defendant Scott Zizza (“Scott”) entered into a private agreement regarding property division, child custody, visitation, and support. Kimberly and Scott were to have joint legal custody of their two daughters, while Kimberly retained physical custody. Scott was to pay weekly child support in the amount of $262.00 until the children were emancipated. Additionally, he was to maintain health and dental insurance for the children during that time. Uninsured medical and dental expenses for the children were to be shared. The agreement further provided that it could be modified by written agreement of the parties, but not by any court.
After a number of years, Kimberly alleged that Scott had failed to meet his child support obligations under the agreement. Rather than bringing an action in the Probate and Family Court,[3] Kimberly filed a small claims action in the District Court for breach of contract. After years of litigation through various courts, the parties resolved their dispute with an agreement for judgment, which reiterated the ongoing child support obligations, along with a proviso that the agreement for judgment was not modifiable. Kimberly appealed the court’s subsequent clarification of the judgment, as she took it to be an impermissible modification. When that appeal was dismissed by the trial court, Kimberly appealed from the dismissal of her appeal. Before that appeal could be heard by this Division, Kimberly filed another appeal, this time from the court’s finding that Scott had no ability to pay the judgment and that the child support order would have to be modified as a result; again, she challenged the court’s authority to modify the agreement for judgment. We view this *218 case, rather, as presenting the question of the ability of parties, by contract, to dictate the actions of third parties, including the court.
A brief recitation of prior proceedings is necessary for a full appreciation of the question on appeal. In November, 2007, Kimberly filed a small claims action in the District Court (Zizza v. Zizza, Haverhill District Court, No. 0738SC1277), alleging that Scott was in breach of contract.[4] In February, 2008, Kimberly had the matter transferred to the regular civil session (Zizza v. Zizza, Haverhill District Court, No. 0838CY0135), claiming additional damages. There, she obtained a default judgment against Scott in April, 2008. In an attempt to get satisfaction for that judgment, Kimberly had Scott’s car seized. Additionally, Kimberly filed a complaint in the Probate and Family Court to register the foreign divorce and to hold Scott in contempt (Zizza v. Zizza, Essex Probate and Family Court, No. ES08DI450-FM1).
In order to obtain the release of his car and resolve the newly filed action, Scott entered into another agreement with Kimberly in July, 2008. In it, he agreed to make certain payments by certain dates and to abide by all future child support obligations.[5]
In December, 2008, Kimberly filed an action in the Superior Court, this time not only against Scott, but also against the company that he worked for and the company president (Zizza v. Zizza, Essex Superior Court, No. ESCV2008-2419). In addition to Scott’s breach of contract, the complaint alleged that Scott’s employer was liable for failing to deduct child support payments from Scott’s paychecks and send them directly to her in the manner that she and Scott had agreed. The Superior Court dismissed the action for want of jurisdictional amount, and Kimberly refiled the action in the District Court (Zizza v. Zizza, Haverhill District Court, No. 1038CV0325) in March, 2010.[6]
In March, 2011, the case was transferred to another District Court division for a jury trial (Zizza v. Zizza, Newburyport District Court, No. 1122CV0196). Kimberly and Scott settled the litigation by agreement dated July 5,2011.[7] The agreement was handwritten on a District Court form meant to assist parties in small claims, supplementary process, and summary process. In the “judgment” section of the form, the *219 parties indicated that judgment would enter for Kimberly and against Scott in the amount of $50,000.00. In the “payment agreement” section of the form, the parties indicated that the action would be marked up for hearing in supplementary process and that
[sjpecific performance is ordered as to all future obligations of support, and health insurance. Further, DOR [Department of Revenue] by stipulation of parties has the ability to enforce this judgment by any and all means allowed by law. This order and previous contracts are not modifiable.
On July 7, 2011, the court entered the $50,000.00 judgment, and issued an order in the language quoted above. The same day, Kimberly filed an application for supplementary process “for child support under contract,” and another case commenced (Zizza v. Zizza, Haverhill District Court, No. 1138SP0273).[8]
In the supplementary process action, the court ordered Scott to make weekly payments to Kimberly of $262.00 beginning July, 2011. Thereafter, Kimberly filed a complaint for contempt against the judge, in his individual as well as his judicial capacity, and against the Chief Justice of the District Court. She then attempted to appeal the order, but that failed as supplementary process orders are not appealable. See G.L.c. 224, §18. Her subsequent petition to the Single Justice of the Supreme Judicial Court, pursuant to G.L.c. 211, §3, was also denied.[9]
On September 22, 2011, the court issued a “Clarification of Order for Judgment for Child Support,” indicating that the Department of Revenue required such information for enforcement. The court stated that the $50,000.00 judgment constituted child support arrears and broke down that sum to reflect the amount that was actually in arrears, the amount accrued in interest, and the amount attributed to costs. The court further set forth the additional amounts that had become due since the judgment, and added a note: “DOR is not to deduct any more than the $262 per week currently being deducted from the defendant’s paycheck unless his weekly payment increases.”
On October 3, 2011, Kimberly filed a timely notice of appeal from the court’s September 22, 2011 clarification of the July 7, 2011 judgment. She thereafter filed a *220 timely expedited appeal and brief under Dist./Mun. Cts. R. A D. A., Rule 8A One month later, the trial court dismissed the appeal, noting that Kimberly’s appeal was actually an untimely appeal of the July 7, 2011 judgment, and further that she was attempting to circumvent the rule prohibiting appeals from supplementary process orders. Kimberly thereafter appealed from the dismissal of her appeal.
While that appeal was pending, the parties would appear periodically for payment reviews in the supplementary process session. On October 18,2013, the court found that Scott had no ability to pay the judgment and indicated that the child support order would therefore have to be modified. Kimberly took another appeal, claiming that the court had no authority to modify the judgment by its own terms.
With respect to the first appeal, we pass the question of whether the trial court had the authority to dismiss the appeal in the manner that it did and proceed to the merits of the underlying appeal, as Kimberly had previously briefed it; it is essentially the same claim raised in the subsequent appeal, namely, whether the trial court had the authority to modify a court order that indicated that it was not modifiable.
In the first appeal, Kimberly claims that the trial court modified the order in its clarification of the judgment by indicating that the DOR was limited to recovering $262.00 from Scott’s weekly paycheck, when the original order indicated that the DOR had the ability to enforce the judgment by any and all means allowed by law.[10] We see no contradiction. In delegating to the DOR the responsibility for enforcing the child support provisions of the agreement for judgment, the court correctly informed the DOR of the parties’ agreement that Scott was obligated to pay $262.00 per week. According to the agreement, the DOR could take any action allowed by law to compel Scott’s payment of that obligation.[11] There is no indication that the DOR had at its disposal some available method of compelling Scott’s weekly payment of $262.00 that it was prohibited from undertaking due to the courts clarification. Kimberly has therefore failed to establish that the court worked any modification to the agreement.[12] Moreover, at the time of the court’s clarification of judgment, the case was pending in supplementary process. There, the court had ordered Scott to pay the judgment in weekly increments of $262.00. Essentially, the court found that Scott had no ability to pay the $50,000.00 judgment and only the ability to meet his ongoing weekly child support obligation. In limiting the DOR to this obligation, the court was also ensuring that the DOR was acting in accordance with the supplementary process order. There is no merit to the first appeal.
In the second appeal, Kimberly claims that the trial court indicated that it would *221 be modifying Scott’s child support obligation due to his inability to pay the judgment. This claim is also without merit. First, the claim is premature; it was taken simply upon the courfs indication that it would be modifying the order in the future; there is no indication in the record that this ever came to pass. On the following supplementary process review date in December, 2013, Kimberly filed a suggestion of her own bankruptcy, indicating that the automatic stay applied to stay any further action in supplementary process against Scott; the record reflects no further action since that date.[13] Second, the claim is an impermissible appeal from court action within a supplementary process proceeding. See Schifano v. Razzaboni, 466 Mass. 1006 (2013), quoting G.L.c. 224, §18 (in supplementary process proceedings, “ [t] here shall be no appeal from any judgment, order or sentence”).[14]
Nevertheless, Kimberly contends that the parties intended that only the $50,000.00 money judgment would be subject to supplementary process and that the ongoing payment obligations would remain an order of the court, enforceable by civil contempt. This contention on appeal is belied by her position below that supplementary process applied to ongoing child support. The reference to supplementary process in the agreement for judgment appears in the payment agreement section, where the parties dealt with ongoing child support. Additionally, Kimberly’s application for supplementary process stated that it was being filed for “child support under contract,” rather than to collect on a $50,000.00 judgment. Finally, when the parties first appeared before the court in supplementary process, Kimberly argued that Scott should be held in contempt and jailed for having failed to “specifically perform” his support obligations. Thus, we reject this contention.
In any event, supplementary process proceedings are themselves in the nature of contempt. See generally Birchall, petitioner, 454 Mass. 837, 847-853 (2009). Whether Kimberly sought compliance with the judgment through an ordinary civil contempt proceeding or through supplementary process, the inquiry is the same: whether Scotfs actions constitute “clear and undoubted disobedience of a clear and unequivocal command.” Id. at 851-852. To the extent that the contempt alleged is failure to make a court-ordered payment, a finding of contempt cannot be made unless Scotfs ability to pay is “clear and undoubted.” Id. at 852. The burden is on Kimberly, as the judgment creditor, to establish this by clear and convincing evidence. Id. at 849-850, citing G.L.c. 224, §16. If she fails to do this, “the supplementary process proceedings *222 must be dismissed and there can be no order to pay.” Id. at 852. Although we do not review supplementary process orders, we see nothing in the record to indicate that Kimberly met her burden.[15] The second appeal is also without merit.
Finally, although we need not, and do not, reach the issue, we make the following observation concerning the court’s authority to modify a private agreement regarding child support. The Legislature has declared that it is against public policy for a court to enforce an agreement between parents “if enforcement of the agreement prevents an adjustment or modification of a child support obligation when such adjustment or modification is required to ensure that the allocation of parental resources continues to be fair and reasonable and in the best interests of the child.” G.L.C. 119A, §1. Here, the parties’ agreement allows modification only by agreement of both parties and not by any court; therefore, if only one party seeks modification, that party has no recourse. The child support obligation thus becomes fixed for all time without any possibility of review due to a change in circumstances, quite possibly to the detriment of the children. To the extent that the parties’ agreement purports to prohibit any court modification of the agreement, it may well run afoul of public policy, which must take precedence over the parties’ freedom to enter into a binding agreement. See White v. Laingor, 434 Mass. 64, 66 (2001) (private agreement concerning child support unenforceable without judicial determination that agreement was in best interests of child).
These appeals are dismissed.

 We recognize that separation agreements may be enforced by actions for breach of contract in courts other than the Probate and Family Court, see Ratchford v. Ratchford, 397 Mass. 114 (1986) (affirming Boston Municipal Court assuming jurisdiction over breach of contract claim arising out of separation agreement), but note that parties in the ordinary course submit to the Probate and Family Court, which has special expertise in these matters, to resolve issues involving child support.

 In 2005, Kimberly became an attorney licensed to practice in Massachusetts and thereafter represented herself and her daughters throughout all of the litigation arising out of the agreement, which was drafted by her.

 Judgment was satisfied in the District Court matter, and Kimberly voluntarily dismissed the Probate and Family Court matter within a week of its filing.

 The Superior Court dismissed the action in July, 2009, noting that the claims against Scott’s employer were “patently without merit” and warned of the possibility of sanctions under Mass. R. Civ. R, Rule 11, if the same claims were to be refiled in the District Court. Kimberly appealed the dismissal, which was ultimately affirmed by the Supreme Judicial Court in March, 2010. See Zizza v. Zizza, 456 Mass. 401, 410 (2010).

 Scott’s employer was earlier dismissed from the case upon motion, after three months of litigation in the District Court, following a year and a half where the case traveled from the Superior Court to the Appeals Court, to the Supreme Judicial Court, returning to the Superior Court for dismissal.

 The filing of supplementary process immediately upon the issuance of judgment undermines the purpose of the proceeding, which “is to provide a searching inquiry into the ability of the judgment debtor to pay his legal obligation, to relieve him from harassment if found unable to pay, but to compel him to do what an honest man ought to be willing to do if found able to pay in whole or in part.” Birchall, petitioner, 454 Mass. 837,844 (2009), quoting Giarruso v. Payson, 272 Mass. 417, 420 (1930). A creditor’s institution of contempt proceedings before the debtor has even had an opportunity to comply not only could be viewed as harassment itself, but also would fail to make out a claim for contempt. See id. at 854 (before one may be found in contempt, one must be given adequate time to pay); Crystal, petitioner, 330 Mass. 583, 588-589 (1953) (finding of contempt vacated where based on failure to make payment ordered only moments earlier).

 The case was transferred to the Newburyport District Court (without change of docket number) and continues with periodic payment reviews.

 Kimberly also complains of the court’s denial of several of her motions for contempt, arguing that the court failed to enforce its own judgment. Those actions were not timely appealed and are therefore not before us.

 We do not interpret the agreement to allow the DOR to change the amount of the obligation, only to enforce the amount that was agreed to by the parties.

 To the extent that Kimberly argues that the clarification of judgment prevented the DOR from pursuing Scott’s payment of the $50,000.00 judgment, she has not shown that any such effort on the part of the DOR would have been “allowed by law.” In any event, the DOR enforcement language was not contained within the money judgment section of the agreement form, but only within the payment agreement section, which dealt with ongoing child support.

 Kimberly had filed for bankruptcy under Chapter 13 more than two years earlier in March, 2011; that petition was converted to one under Chapter 7 in January, 2013. After Kimberly’s challenge, the conversion was affirmed on appeal in October, 2013. See In re Zizza, 500 B.R. 288 (1st Cir. BAP 2013).

 There is one exception to the prohibition on appeal, and that is where the creditor alleges fraud. See G.L.c. 224, §19. The claim must be that, after accruing the debt, the debtor concealed or conveyed away his assets or gambled away his fortune; alternatively, the claim may be that the debtor entered into the payment obligation with no intent to pay from the beginning. Id. Although Kimberly alleges fraud on appeal, she did not follow the procedure required to preserve the claim, and in any event, she did not file the appeal in the correct forum. See id. (charge of fraud must be written and under oath by creditor, and after debtor found to be guilty or not guilty, parties may appeal to Superior Court).

 If child support had been pursued through the Probate and Family Court, as suggested by all of the other courts that have heard this matter, the burden would have been on Scott to prove his inability to pay. See Birchall, petitioner, supra at 850 n.13, citing G.L.c. 215, §34.