The plaintiff, Annie B. Dunbar, brought a complaint for contempt against her former husband, the defendant, Philip R.D. Dunbar, alleging that he failed to pay her a portion of the three payments that he received from his employer. In her view, the parties' judgment of divorce, which provided that she would receive one-third of any bonus income as alimony, applied to the payments at issue and compelled Philip[2] to pay her one-third of the total amount. After a trial in the Probate and Family Court, the judge found that the disputed amount had been labeled a bonus by Philip's employer through no fault of Philip's and that the amount was, in fact, "a stock option plan." For that reason, the judge concluded that Philip had not violated a clear and unequivocal order of the court, had, in fact, complied with the judgment of divorce, and was therefore not guilty of contempt; nor did he owe Annie one-third of the contested amount. Annie appeals, arguing that the judge erred in finding that Philip did not willfully violate a clear and unequivocal order of the court and, further, that, even if Philip was not guilty of contempt because the order was not clear and unequivocal, he still owed her one-third of the amount of the payments. We affirm.
Background. The parties were divorced on February 10, 2004. The judgment of divorce nisi provided that Philip pay Annie $ 850 per week in alimony. "As additional alimony, the [h]usband [was ordered to] pay one third (1/3) of his gross bonus income within forty-eight (48) hours of his receipt." At the time of divorce, Philip was employed as an engineer, making $2,645.37 weekly.[3] He also had stock options and other employee benefits.[4] The stock options were divided equally between the parties. ("Any and all stock options held by the [h]usband whether vested or [unvested] as of January 29, 2004 [were ordered to] be divided equally as reflected in a [s]tipulation of the parties dated January 29, 2004 [which had been incorporated into the judgment of divorce].")
In March, 2008, Philip accepted a job offer from Industrial Defender, Inc. (Industrial Defender), as a director of engineering. Industrial Defender's offer included several methods of compensation. Philip would receive a $ 153,000 base salary and was "entitled to an option to purchase 50,000 shares of Industrial Defender Common Stock pursuant to Industrial Defender's Employee Stock Plan and subject to approval by Industrial Defender's Board of Directors." The stock options, if purchased, would vest over a four-year period subject to a one-year "cliff" vesting period and an allotment of one-forty-eighth (1/48th) of the shares per month thereafter.[5] That is, Philip was required to work one year before the equity accrued and thereafter he would receive the balance of his shares, piecemeal, over the four-year vesting period.
On August 1, 2008, Industrial Defender adopted what it called the "Industrial Defender Change of Control Bonus Plan" (Change of Control Bonus Plan).[6] The employees who elected to participate received "[p]oints" in lieu of stock options; the number of points received were intended to be equivalent to the number of stock options the individual employee held.[7] Philip would receive 100,000 "[p]oints" subject to the vesting schedule.[8]
In 2014, Industrial Defender entered into a stock purchase agreement with Lockheed Martin Corporation (Lockheed Martin). Under the agreement, the employees of Industrial Defender would receive "[p]oints" for the amount of their stock options that had already vested, and the unvested options would cease to exist. Philip received his first Change of Control Bonus Plan check on December 31, 2014, in the amount of $ 487,145.82. Significantly, his compensation statement for the year 2014 -- on his final paycheck from Industrial Defender -- read, "Regular" pay $ 188,024.96, "Bonus" $ 12,467, and "Change in Ctrl" $ 487,145.82. Altogether, from 2014 to 2016, Philip received three annual installments for the Change of Control Bonus Plan, in the amounts of $ 487,145.82, $ 22,785.72, and $ 22,906.09 respectively. Philip did not pay Annie one-third of these amounts within forty-eight hours of their receipt, or at any time.
Discussion. In an appeal from a jury-waived trial, "[w]e examine (1) whether the factual findings are 'clearly erroneous,' giving 'due regard ... to the opportunity of the trial court to judge of the credibility of the witnesses,' ... ; (2) whether there were errors of law; and (3) whether the judge appears to have based her decision not on sound discretion, but 'on whimsy, caprice, or arbitrary or idiosyncratic notions.' Bucchiere v. New England Tel. & Tel. Co., 396 Mass. 639, 642 (1986). The standard of review reflects substantial, but not unlimited, deference to the judge who saw the witnesses and heard the evidence." Pierce v. Pierce, 455 Mass. 286, 293 (2009). See Mass. R. Dom. Rel. P. 52(a). It is the appellant's burden therefore to show that a finding of fact is clearly erroneous because the judge, who has a "firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence" (quotation omitted). Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509-510 (1997).
The issue here is whether the payments Philip received from Industrial Defender and Lockheed Martin, labeled "Change of Control Bonus," were in fact bonus monies or the product of the sale of stock options. That issue turns on the wording of the 2004 judgment of divorce itself, as no extrinsic evidence was offered to clarify the judgment and, also, on the nature and purpose of the payments. Essentially, the question is, were the Change of Control Bonus Plan payments that Philip received in fact a bonus, thus rendering it additional income, one-third of which he was obligated to pay to Annie as alimony.
The 2004 judgment of divorce divided Philip's compensation -- and his resulting obligations to Annie -- into three categories: (1) salary, (2) bonus income, and (3) stock options. As noted, from the salary, he was to pay her $ 850 per week in alimony. From any bonus income, he was to pay her one-third within forty-eight hours of receipt. Finally, he was to liquidate any stock options, "whether vested or [unvested] as of January 29, 2004," and divide the proceeds equally between the parties "as reflected in a Stipulation of the parties dated January 29, 2004."
Annie argues that the monies Philip received under the Change of Control Bonus Plan were in fact a "retention bonus." She defines retention bonus as a "payment or reward outside of an employee's regular salary that is offered as an incentive to keep a key employee on the job during a particularly crucial business cycle, like a merger or acquisition." The judge, however, noted that, at the time Philip was offered his position with Industrial Defender, he was given, inter alia, "50,000 shares of Common Stock pursuant to the Employee Stock Plan." "[S]ometime in 2008 the company voted to change the name of the Employee Stock Plan to the Change [of] Control Bonus Plan. Significantly, Philip's stock options were converted into points, being provided with one point for each stock option. As with the stock options, the points were not vested at that time. Also importantly, the vesting schedule for the points was identical to the vesting schedule for the stock options which he had been given when accepting the offer of employment." On these facts, the judge concluded that the monies in question were, in fact, the proceeds of stock options and not a bonus.
Philip's payment under this plan was the result of Lockheed Martin's purchase of Industrial Defender and was not the result of any job-related performance. Philip received the proceeds of the shares of Industrial Defender common stock granted to him pursuant to the employment offer. As part of the sale, Lockheed Martin offered employees, with vested equity, cash to relinquish their Industrial Defender shares. Lockheed Martin then attributed points to each employee holding equity, proportional to the number of shares the employee held in Industrial Defender, and paid $ 4.42 per vested share.
Philip's Change of Control Bonus Plan letter stated, in pertinent part, "[Y]ou will be entitled to receive a bonus payment (your 'COC Bonus') calculated by reference to the price paid by Lockheed Martin to purchase the Company and ... you will receive as a COC Bonus approximately $ 4.42 per vested Point." Although styled by the company as a bonus payment, the payment was not a bonus as contemplated by the judgment of divorce. This simply was not a bonus type of payment. The monies would be paid to employees with points irrespective of the work the employees or any other equity holder performed as the $ 4.42 per vested share was the price set by the valuation of Industrial Defender stock. Furthermore, Philip did not receive (nor was compensated for) another "[p]oint" during his remaining time at Lockheed Martin.
Other facts in the record support this conclusion. Specifically, in order to participate in the Change of Control Bonus Plan, employees were required to submit a "Beneficiary Election Form." This procedure is not consistent with a bonus where money is given on a specified date decided by management (e.g., holiday bonus) but is, rather, a hallmark of holding securities where the sale comes at a time of the owner's election. Designating a beneficiary allows the securities to be transferred legally in the event of the owner's death. Furthermore, Industrial Defender employees holding equity were charged holdbacks and expenses. Such charges are consistent with stock ownership, not bonus payments.
After careful review, we are satisfied that the judge's conclusion was sound, and certainly not clearly erroneous. "[A] civil contempt finding [must] be supported by clear and convincing evidence of disobedience of a clear and unequivocal command." Birchall, petitioner, 454 Mass. 837, 853 (2009). K.A. v. T.R., 86 Mass. App. Ct. 554, 567 (2014). Here, because we agree that there was no disobedience, there can be no finding of contempt. Accordingly, there is no basis upon which to order Philip to pay the money to Annie, as she requests.[8]
Judgment affirmed.

We use the parties' first names because they share a last name.

Philip also received a $ 20,000 bonus in 2003.

The judge at the time of the divorce described "an employment benefit which provided for loans totaling $ 75,000.00 and then, ultimately, the forgiveness of those loans."

The employee was required to work for the duration of the cliff, or probationary, period before beginning to accrue the allotted equity.

The Change of Control Bonus Plan was designed to facilitate a transition in the event that Industrial Defender was acquired by another company, and also to compensate the employees who previously exercised stock options in Industrial Defender.

Employees who chose to participate were mandated to sign a "Beneficiary Election Form." The vesting schedule under the Change of Control Bonus Plan was identical to the vesting schedule for the stock option plan in the original Industrial Defender offer to Philip.

Philip testified at trial that he received two points for every vested stock option he owned. This raised his total from 50,000 points to 100,000 points.

Annie's request for appellate fees and costs is denied. Philip's request for appellate fees is denied.