NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-1395                                            Appeals Court

COMMONWEALTH  vs.  JONATHAN THEOGENE.


No. 24-P-1395.

Middlesex.      December 2, 2025. – April 9, 2026.

Present:  Singh, Grant, & Tan, JJ.


Rape.  Evidence, Spontaneous utterance.  Social Media.  Cellular
    Telephone.  Practice, Criminal, Required finding, Sentence.
    Practice, Civil, Contempt.  Contempt.  Imprisonment, Credit
    for time served.


    Indictments found and returned in the Superior Court
Department on March 11, 2022.

    The cases were tried before David A. Deakin, J.


    Brad P. Bennion for the defendant.
    Mallorie Sckerl, Assistant District Attorney, for the
Commonwealth.


    TAN, J.  The defendant appeals from his convictions of rape

and assault and battery after a jury trial in the Superior

Court.  Before trial, he was found in civil contempt and held in

custody for failing to comply with a court order to provide the

personal identification number access code (PIN) to his cell

phone.  We hold, as a matter of first impression, that the defendant was not entitled to receive jail credit pursuant to G. L. c. 279, § 33A, for the time he was held in custody for civil contempt prior to sentencing.  We also hold that the judge acted within his discretion in admitting in evidence as excited utterances two typewritten captions on a Snapchat[1] video message and appropriately denied the defendant's motions for required findings of not guilty.  For the reasons that follow, we affirm.

Background.  1.  Facts.  Where the defendant challenges the sufficiency of the evidence, we summarize the evidence in the light most favorable to the Commonwealth, reserving certain details for discussion.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

The victim, who was eighteen years old at the time of the offenses, had been in the custody of the Department of Children and Families since she was thirteen years old and spent many years living in group homes.  In February 2022, she was living in a "pre-independent living home."  The victim's "Voluntary Placement Agreement" required her to be either working or in

---

[1] Snapchat, a social media application designed for temporarily visible communications, allows users to share text, photographs, and video recordings.  See Commonwealth v. Carrasquillo, 489 Mass. 107, 108-109 (2022).

school, and she had a curfew of 8 P.M. In February 2022, she was working at a restaurant in a shopping mall in New Hampshire.

The victim first met the defendant, who was working at the same mall, when she went into the store where he was employed on February 17 or 18, 2022. Over the next few days, they communicated with each other through direct messages on Instagram.[2] On February 18, 2022, the victim messaged the defendant, and he responded, "I get Netflix and chill vibes from you." The victim interpreted the defendant's response as flirtatious and responded, "Spot on." They made plans to see each other the next day. On February 19, 2022, the victim went to the mall and met up with the defendant. They got into his car, and he drove them to his home in Newton.

The defendant and the victim had sex in the basement of the defendant's home. The victim did not say no, because "at first [she] was into it" and she "was not really objecting," but she did object to "the anal part."

Later in the day, the victim told the defendant that she did not want to have sex, but the defendant did not seem to care, "[p]hysically did not stop," and penetrated the victim's vagina and anus with his penis. The defendant also slapped the

---

[2] Instagram is "a social media platform that enables users to share photographic content and send messages to other users." Commonwealth v. McMann, 97 Mass. App. Ct. 558, 558 n.1 (2020).

victim's breast and "bottom."  He "smacked" her in the face, which caused her lip to bleed.  The defendant used his cell phone to take video recordings of the victim even though she told him not to record her.

The victim became worried about what was happening.  Alone in the living room, she used the Snapchat application on her cell phone to record a video message to a friend from her group home who the victim knew could determine her location by cell phone.  The video recording, which was admitted in evidence, showed the victim's bloody face, and in it she was crying and whispering.  To the video recording, the victim added two Snapchat captions,[3] one stating, "your tracking me right?" and the other stating, "mf slapped me during sex and i got triggered."[4]  The victim did not say she was in a dangerous situation because she did not want her friend to alert the staff of the group home, and she thought she could handle the situation.

Later that day, the defendant pushed the victim onto a bed and penetrated her anus, vagina, and mouth with his penis.  The victim told the defendant that she did not want to have sex and

---

[3] The caption (or "banner") feature enables a Snapchat user to add an overlay with text to an image or video recording.

[4] The victim testified that "mf" meant "[m]otherfucker."

that he was hurting her, but he did not stop. Because she was scared, the victim had previously set her cell phone to continuously record audio, and it recorded the events. The defendant again made a video recording of parts of these sexual assaults with his cell phone.[5]

Around 8 P.M. that evening, the victim's residential counsellor from her group home called her cell phone, asking where she was, and the victim responded that she was at work at the mall. Later that evening, the victim left the defendant's home and walked to a convenience store where the store clerk called the police, who arrived and spoke with the victim. The police arrested the defendant later that night.

The following day, police executed a search warrant at the defendant's home and seized evidence, including a cell phone matching the victim's description of the one the defendant used. At arraignment, the defendant was held without bail and thereafter detained for dangerousness pursuant to G. L. c. 276, § 58A.

---

[5] From the record before us, it appears that the Commonwealth acquired these video recordings from the defendant's cell phone with the forensic devices Graykey and Cellebrite. However, the devices enabled the Commonwealth to perform only a "partial extraction" of the cell phone, with some content remaining inaccessible. No issue is before us concerning the admissibility of these video recordings; the defendant argued at trial that they proved the victim's consent.

2.  Contempt proceedings.  At arraignment, the Commonwealth filed a motion to require the defendant to produce the PIN to his cell phone.[6]  A judge allowed the motion on May 5, 2022, and ordered the defendant to produce the PIN.  At a status hearing on May 24, 2022, the defendant entered a PIN into the cell phone that did not unlock it and claimed that he did not know the correct PIN.

On June 3, 2022, the Commonwealth filed a "motion in the nature for civil contempt," citing Mass. R. Crim. P. 43, as appearing in 466 Mass. 1501 (2013) (rule 43).  The same day, a different judge (motion judge), also citing rule 43, allowed the motion and found the defendant in contempt of court for refusing to comply with the order to input the PIN.  In her decision, the motion judge found that the defendant knew the PIN to the cell phone.  She ordered the defendant to be held in custody "until such time as he complies with that order" and set a status conference for July 6, 2022.  At the status conference, the defendant filed a motion to vacate the order finding the

---

[6] See Commonwealth v. Gelfgatt, 468 Mass. 512, 524 (2014) (defendant could be required to provide encryption key to decrypt files on seized computers where "[t]he facts that would be conveyed by the defendant through his act of decryption — his ownership and control of the computers and their contents, knowledge of the fact of encryption, and knowledge of the encryption key — already are known to the government and, thus, are a 'foregone conclusion'").

defendant in contempt.  The motion judge denied the motion to vacate, finding that the defendant had violated the May 5, 2022 order by not providing the PIN, and clarified that the defendant was held in "civil contempt" pursuant to "MRCP 65.3."[7]  The defendant never purged the contempt.

3.  Verdicts and sentencing.  On June 30, 2023, following a jury trial, the defendant was convicted of four counts of rape, G. L. c. 265, § 22 (b), and one count of assault and battery, G. L. c. 265, § 13A (a).  The trial judge sentenced the defendant on three of the rape convictions to concurrent State prison terms of from five to seven and one-half years; on the assault and battery conviction, to a concurrent eighteen-month term in the house of correction; and on the remaining rape conviction, to three years' probation to commence on his release.

At sentencing, the defendant asked the trial judge to award him credit for all 520 days he spent in detention prior to sentencing.  The trial judge denied the defendant's request in part, finding that he was not entitled to jail credit for the time he spent in custody while held in civil contempt for

---

[7] On July 19, 2022, the defendant filed a motion for reconsideration, and it appears that the motion was denied on September 8, 2022.

failing to follow the court order to provide his PIN.  The trial

judge awarded the defendant 130 days of jail credit.[8]

Discussion.  1.  Admissibility of the captions on the

Snapchat video message.  The defendant contends that the trial

judge erred in admitting in evidence as excited utterances the

two captions the victim typed in the Snapchat video message.  We

are not persuaded.  Because the defendant objected to the

evidence at trial, we review for prejudicial error.  See

Commonwealth v. Imbert, 479 Mass. 575, 579 (2018).

A party seeking to admit a statement as an excited

utterance must show that "(1) there [was] an occurrence or event

'sufficiently startling to render inoperative the normal

reflective thought processes of the observer,' and (2) . . . the

declarant's statement was 'a spontaneous reaction to the

occurrence or event and not the result of reflective thought'"

(citation omitted).  Commonwealth v. Santiago, 437 Mass. 620,

623 (2002).  See Mass. G. Evid. § 803(2) (2025).

The defendant concedes that the Snapchat video recording

was likely admissible without the captions but argues that the

_____

[8] The trial judge awarded the defendant credit for the time
he spent in custody from the date of his arrest on February 19,
2022, to the date he was found in contempt on June 3, 2022 --
105 days -- and from the date the jury returned their verdict on
June 30, 2023, to the date of sentencing on July 24, 2023 --
twenty-five days.

captions in the video message should have been redacted because they fail to meet either requirement for admissibility. The defendant argues that the captions were not excited utterances because they were a result of reflective thought and not a spontaneous reaction to a sufficiently startling event. As evidence of reflection and planning, the defendant points to the victim's testimony that she sent the video message to tell her friend "to keep an eye on me, on my location" because she "had a fear that things would go really, really bad," but "altered the words a little bit to make it seem like [she] was still in control of the situation so the program would not know where [she] was." The defendant also asserts that because the victim had already had consensual "rough sex" once with the defendant, there was inadequate evidence that "doing the same activities" during the second sexual encounter amounted to a "sufficiently startling" event.

Given these circumstances, we conclude that the judge acted within his discretion in ruling that the victim's statements in the Snapchat captions qualified as excited utterances. In the Snapchat video recording, the victim appeared upset, frightened, and under the influence of an exciting event. The Snapchat video recording shows the victim crying and whispering and her lip appears to be bleeding; sounds of movement can be heard in the background. The victim sent the Snapchat video message

while still in the defendant's home just after the defendant penetrated her anus after she said no and struck her in the face. See Commonwealth v. Baldwin, 476 Mass. 1041, 1042 (2017) (factors to be considered in excited utterance inquiry include whether statement made in same location as precipitating event, temporal proximity to event, and age, spontaneity, and degree of excitement of declarant). As noted, the victim testified that she sent the Snapchat video message so that her friend could track her location because the victim feared that "things would go really, really bad." The tone and manner of the typed Snapchat captions supported their spontaneous nature. See Commonwealth v. Mulgrave, 472 Mass. 170, 179 (2015) ("the tone and manner of the declarant, as evidenced by the writing itself, supports a determination that this statement was spontaneous, and thus reliable"). They related "only to the circumstances of the threat to the victim's safety and her reaction (fear) to that threat." Id.

The defendant also contends that the multiple steps the victim took to create the Snapchat video message -- taking the video recording, uploading it to the application, adding the captions, creating the text for the captions, and sending the video message -- demonstrate that the statements were not excited utterances because of the effort it took. We disagree.

In Commonwealth v. Mulgrave, 472 Mass. at 178, the Supreme Judicial Court recognized that written text messages can qualify as excited utterances and that their ability to be sent and received instantly "diminishes the concern about spontaneity that might arise with other more deliberative modes of written communication."  The court recognized that "the growth of cellular telephones has made text messaging and other types of written electronic statements ubiquitous forms of rapid communication," and concluded that the "opportunity for instant communication by way of cellular telephone technology elevates text messages, at least on the spontaneity scale, beyond the level of an ordinary writing."  Id. at 178-179.  Similarly, the increase in popularity of social media applications such as Snapchat as a means of communication has allowed Snapchat users to add captions to images and video recordings with little effort[9] to verbalize a thought, feeling, or emotion in response to an event.  See id. at 178 ("For a person proficient in the use of the cellular telephone technology, sending a text message may involve no more effort than verbalizing a thought, feeling, or emotion in response to an event").  Contrast Commonwealth v. DiMonte, 427 Mass. 233, 239 (1998) (handwritten facsimile

---

[9] The victim described the ease with which captions can be added, testifying, "You tap the photo and you just type."

message was not excited utterance when sent at least eight and one-half hours after victim screamed, and significant part concerned matter unrelated to startling event, suggesting message was premeditated).

The trial judge acted within his discretion in concluding that the Snapchat captions were admissible as excited utterances.  See Commonwealth v. Zagranski, 408 Mass. 278, 285 (1990) ("We recognize broad discretion in the trial judge in any review of the question whether an utterance met the test of admissibility").

2.  Sufficiency of the evidence.  We are not persuaded by the defendant's claim that the trial judge erred in denying his motions for required findings of not guilty, at the close of the Commonwealth's case and after the close of the defendant's case, on the four rape indictments of which he was convicted.[10]

When reviewing a challenge to the sufficiency of the evidence, we consider whether, after viewing the evidence and all reasonable inferences that may be drawn therefrom in the

---

[10] Although the defendant does not argue in his brief that the evidence was insufficient to convict him of the indictment for assault and battery by hitting the victim's face with his hand, we note that the victim's testimony that the defendant struck her in the face and the photograph and video recording showing her bloody lip, viewed in the light most favorable to the Commonwealth, were sufficient evidence to support the conviction of assault and battery.

light most favorable to the Commonwealth, any rational trier of fact could find that each of the essential elements of the crime has been proved beyond a reasonable doubt. Latimore, 378 Mass. at 677-678. If conflicting inferences can be drawn from the evidence, "it is for the jury to determine where the truth lies, for the weight and credibility of the evidence is wholly within their province." Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007) and 460 Mass. 12 (2011).

Here, the defendant contends that we should determine that the victim's testimony was not credible because of inconsistencies in her statements. We are not persuaded. The victim testified to facts that met each element of the offenses of which the defendant was convicted, and the jury credited that testimony, as evidenced by their verdicts. "[C]redibility is a question for the jury to decide; they may accept or reject, in whole or in part, the testimony presented to them" (quotation and citation omitted). Commonwealth v. Kapaia, 490 Mass. 787, 793 (2022). The jury rendered their verdicts after hearing the defendant's cross-examination of the victim at trial, where he impeached her with her prior inconsistent statements and elicited an admission from her that she previously lied to the police about what happened. The victim's testimony, even though it may have been inconsistent at times, "was sufficient, standing alone, to support a finding beyond a reasonable doubt

as to each of the convictions." Commonwealth v. Gonzalez Santos, 100 Mass. App. Ct. 1, 3 (2021). See Commonwealth v. Ruci, 409 Mass. 94, 97 (1991) ("The inconsistencies in the witnesses' testimony . . . go to their credibility and do not affect the sufficiency of the evidence"); Commonwealth v. Fitzgerald, 376 Mass. 402, 410-411 (1978) ("The fact that [the witness's] testimony was inconsistent and contradictory does not render the evidence insufficient; all of her statements are entitled to be considered as probative evidence").

The defense theory rested on whether the victim had withdrawn her consent to sex and verbally conveyed that to the defendant. Pursuant to G. L. c. 265, § 22 (b), the Commonwealth must show "that the defendant committed sexual intercourse (1) by means of physical force; nonphysical, constructive force; or threats of bodily harm, either explicit or implicit; and (2) at the time of penetration, there was no consent" (citations omitted). Commonwealth v. Lopez, 433 Mass. 722, 727 (2001). The victim testified that she told the defendant that she did not want to have sex, but the defendant did not stop. See M.G. v. G.A., 94 Mass. App. Ct. 139, 142 (2018) ("a person's consent may be withdrawn prior to or during the act"). Viewed in the light most favorable to the Commonwealth, the victim's testimony was sufficient evidence to support the convictions. See Gonzalez Santos, 100 Mass. App. Ct. at 3 ("The sworn testimony

of the victim of a sexual assault, including rape, is evidence of the facts asserted").

The evidence presented at trial, viewed in the light most favorable to the Commonwealth, was sufficient to prove the elements of the charges of which the jury found the defendant guilty.

3.  Jail credit.  We confront for the first time the question whether defendants who are held in custody prior to sentencing are entitled to jail credit in their criminal cases for the portion of that time when they were detained as a sanction for civil contempt.  For the following reasons, we conclude that a defendant is not entitled to jail credit in the criminal case in these circumstances.[11]

The defendant incorrectly asserts that on June 3, 2022, the motion judge held him in criminal contempt pursuant to rule 43, and that the open-ended sentence of incarceration the motion judge imposed was illegal because the maximum punishment for criminal contempt under rule 43 is three months' imprisonment

---

[11] Where the parties on appeal did not raise the issue whether a judge would have the discretion to award jail credit in these circumstances, we need not address the question, particularly where the trial judge stated that, even if he had discretion to award the defendant jail credit, he would not exercise his discretion to do so in this case.

and a $2,000 fine.[12] See rule 43 (a) (4). Although the Commonwealth's motion for civil contempt and the motion judge's June 13, 2022 written findings for civil contempt both cited rule 43, it is clear from the record that the defendant was found in civil contempt.[13] Both the motion and the judge's findings were captioned "<u>civil</u> contempt" (emphasis added). Furthermore, the motion judge corrected her order on July 6, 2022, when she denied the defendant's motion to vacate the contempt finding. In a margin endorsement on the motion to vacate, the motion judge clarified, "Correction: Defendant is held in <u>civil</u> contempt (MRCP 65.3) to gain his compliance, <u>not</u> criminal contempt."[14]

"The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until [the

---

[12] The defendant asserts that his criminal contempt sanction should have expired on September 1, 2022, three months after the June 3, 2022 contempt order.

[13] "Every court of superior jurisdiction has the inherent power to compel obedience to its decrees and to punish those who obstruct or degrade the administration of justice." <u>New England Novelty Co</u>. v. <u>Sandberg</u>, 315 Mass. 739, 746, cert. denied, 323 U.S. 740 (1944). See <u>Doe</u> v. <u>Commonwealth</u>, 396 Mass. 421, 422 (1985) ("A court has the inherent power to impose sanctions for contempt of its orders").

[14] Nothing in the motion or order identified any conduct of the type described in rule 43 (a) (1) and (2). Moreover, neither party argues that Mass. R. Crim. P. 44, 378 Mass. 920 (1979), applies here, so we need not address that issue.

contemnor] complies with an affirmative command . . . ." Birchall, petitioner, 454 Mass. 837, 848 (2009) (Birchall), quoting International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 828 (1994) (Bagwell). "When the contemnor is held in custody, there is generally a simple test to determine whether the sanction is civil or criminal. It is civil if 'the contemnor is able to purge the contempt and obtain . . . release by committing an affirmative act, and thus "carries the keys of . . . prison in [the contemnor's] own pocket."'" Birchall, supra, quoting Bagwell, supra. "In contrast, [t]he purpose of criminal contempt . . . is punitive: its aim is to vindicate the court's authority and to punish the contemnor for doing a forbidden act or for failing to act as ordered" (quotation and citation omitted). Birchall, supra. The contemnor's sanction is criminal if the contemnor "receives a fixed sentence of imprisonment, which . . . cannot [be] avoid[ed] or abbreviate[d] through compliance with the court's order." Id.

Here, the motion judge's June 13, 2022 written order finding the defendant in civil contempt stated that she found the defendant "in CONTEMPT OF COURT for refusal to comply with the order of this Court to input the pin/passcode into the blue iPhone . . . , and the Court ORDERS that the defendant is held in custody until such time as he complies with that order." As we have discussed, the motion judge issued a clear and

unequivocal order to the defendant to produce the PIN to his cell phone, and he failed to comply with that order. See Birchall, 454 Mass. at 851 ("[t]o constitute civil contempt there must be a clear and undoubted disobedience of a clear and unequivocal command" [citation omitted]). The defendant failed to meet his burden to show that he could not comply with the order. See Mahoney v. Commonwealth, 415 Mass. 278, 286 (1993). In fact, the judge specifically found that there was clear and convincing evidence that the defendant knew the PIN. The defendant was properly held in civil contempt because he refused to comply with the court order to provide the PIN to his cell phone. See Matter of Grand Jury Investigation, 92 Mass. App. Ct. 531, 531-532, 536-537 (2017) (affirming finding of civil contempt where contemnor refused to comply with court order to provide cell phone PIN and committing contemnor until he purged contempt).

We are unpersuaded by the defendant's argument that the trial judge erred in failing to award him jail credit for the time that he was detained as a sanction for civil contempt.[15] Pursuant to G. L. c. 279, § 33A, a sentencing judge must give a defendant credit for time served in custody before sentencing

_____

[15] At sentencing, the parties agreed that the period of time the defendant was held in custody from the date of his arrest to the date of his sentencing was 520 days.

while awaiting trial and during trial.  See Commonwealth v. Carter, 10 Mass. App. Ct. 618, 619 (1980).  A defendant, however, "is not entitled to jail credit for time spent awaiting trial if he is already serving a committed sentence for unrelated offenses."  Commonwealth v. Pearson, 95 Mass. App. Ct. 724, 726 (2019), citing Commonwealth v. Barton, 74 Mass. App. Ct. 912, 913 (2009).  Here, the motion judge held the defendant in custody on civil contempt to coerce his compliance with the court order to provide his PIN.

We conclude that the sanction for civil contempt was a matter that was sufficiently independent of the criminal case on which the defendant was sentenced and that he was not entitled to have that time credited toward his sentence on the criminal case.[16]  See Pearson, 95 Mass. App. Ct. at 726.  Importantly, public policy considerations dictate this outcome because holding otherwise would undermine a judge's inherent contempt power to coerce a contemnor to obey a court order.  As the trial judge correctly noted at sentencing, for a contemnor who is held in custody pending trial, the coercive power of the contempt order lies in the fact that the contemnor stops earning credit

---

[16] That the defendant was held without bail pursuant to G. L. c. 276, § 58A, is immaterial to our analysis.  Our holding would be the same even if the defendant had been held in custody on a cash bail pending trial or had been admitted to bail and, absent the contempt, would have been released pending trial.

for time served until the contemnor complies with the order.  If we adopted the defendant's argument and concluded he is entitled to jail credit, a contemnor in his position -- i.e., who is held in custody as a sanction for civil contempt while awaiting trial on a criminal case -- would have no incentive to purge the civil contempt by obeying the court order, and would suffer no consequences for refusing to comply with the order.  The trial court would thereby lose its ability to persuade or coerce a contemnor in these circumstances.

These policy considerations are bolstered by jail credit jurisprudence addressing the prohibition against the "banking" of jail credit.  In Manning v. Superintendent, Mass. Correctional Inst., Norfolk, 372 Mass. 387, 395 (1977), the Supreme Judicial Court explained that limits on jail credit may be necessary to avoid "grant[ing] prisoners license to commit future criminal acts with immunity."  Similarly, limiting the entitlement of jail credit here is necessary to preserve the court's inherent contempt power to compel obedience of a valid court order.  As the defendant himself acknowledges in his brief, absent such limitation, "[i]t may be said that a person already incarcerated and indigent is not likely to be persuaded by the court order for contempt."  Just as "the need to prevent criminal defendants from 'banking time' for use against future sentences outweighs any fairness issues normally applicable [to

'dead time']," <u>Commonwealth</u> v. <u>Milton</u>, 427 Mass. 18, 25 (1998), the need to prevent defendants from defying court orders with immunity is paramount here.  "Fairness is the basic touchstone, and is the appropriate measure in determining whether and to what extent credit for time spent in custody shall be given." <u>Commonwealth</u> v. <u>Ridge</u>, 470 Mass. 1024, 1024 (2015).  In these circumstances, we discern no unfair treatment of the defendant and conclude that the trial judge did not err in denying the defendant's request for jail credit for the time he was detained as a sanction for civil contempt.

<u>Judgments affirmed</u>.